**IN THE SUPREME COURT OF THE STATE OF IDAHO**

| | | |
|---|---|---|
| IN RE: PAUL EZRA RHOADES/ RANDY LYNN MC KINNEY/GERALD ROSS PIZZUTO, JR./ DAVID LESLIE CARD/ JAMES H. HAIRSTON, | ) ) ) ) | |
| | ) | **Docket No.  35187** |
| Defendants-Appellants, | ) | |
| | ) | |
| v. | ) | **Boise, August 2009 Term** |
| | ) | |
| | ) | **2010 Opinion No.  23** |
| STATE OF IDAHO, | ) | **Filed:  March 17, 2010** |
| | ) | **Stephen Kenyon, Clerk** |
| Respondent. | ) | |
| _____ | ) | |
| | ) | |
| GENE FRANCIS STUART, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | **Docket No. 34198** |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |
| | ) | |
| GENE FRANCIS STUART. | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | **Docket No.   34199** |
| | ) | |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County, Hon. Jon J. Shindurling, District Judge. (Rhoades)

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Butte County, Hon. James C. Herndon, District Judge.  (McKinney)

1

Appeal from the District Court of the Second Judicial District of the State of Idaho, Idaho County, Hon. John Bradbury, District Judge. (Pizzuto)

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County, Hon. Juneal C. Kerrick, District Judge. (Card)

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County, Hon. Peter D. McDermott, District Judge. (Hairston)

Appeal from the District Court of the Second Judicial District of the State of Idaho, Clearwater County, Hon. Ron Schilling, District Judge. (Stuart)

The orders of the district courts are <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, and Federal Defender Services of Idaho, Moscow, for appellants Stuart, Rhoades, Card and Hairston. Dennis Benjamin appeared.

Office of the Federal Defender for the Eastern District of California, Sacramento, for appellants McKinney and Pizzuto. Oliver Loewy argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. L. LaMont Anderson argued.

HORTON, Justice

This is a consolidated appeal from orders issued by the district courts dismissing Petitioners' successive petitions for post-conviction relief. In those petitions, accompanied by petitions for writ of habeas corpus and motions to correct an illegal sentence, Petitioners asked that their sentences of death be vacated and that they be granted new sentencing trials. Petitioners Paul Rhoades, Randy McKinney, Gerald Pizzuto, David Card, James Hairston and Gene Stuart (collectively referred to as Petitioners) ask this Court to retroactively apply *Ring v. Arizona*, 536 U.S. 584 (2002). This Court previously affirmed the dismissal of all of Petitioners' petitions and motions, except Stuart's, which the Court addresses for the first time in the instant appeal. The United States Supreme Court vacated and remanded each case except Stuart's for additional consideration in light of that Court's opinion in *Danforth v. Minnesota*, 552 U.S. 264,

2

128 S.Ct. 1029 (2008). We consolidated Stuart's case with the other Petitioners because each case implicates identical issues. We affirm the district courts' orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioners were all convicted of first degree murder. At the time each Petitioner was sentenced, I.C. § 19-2515 set forth the procedure a court must follow when the State sought the death penalty. The statute required that a judge find certain aggravating circumstances beyond a reasonable doubt before the court could sentence the defendant to death. *Porter v. State*, 140 Idaho 780, 784, 102 P.3d 1099, 1103 (2004). The district court, in each of Petitioners' cases complied with I.C. § 19-2515 and sentenced each Petitioner to death. Prior to the U.S. Supreme Court's decision in *Ring*, Petitioners had directly appealed their convictions and sought post-conviction relief. The judgment against each Petitioner was final on direct review when the U.S. Supreme Court issued *Ring*.

Within forty-two days of the issuance of the *Ring* opinion, each Petitioner filed with the appropriate district court a petition for post-conviction relief, petition for writ of habeas corpus and a motion to correct an illegal sentence pursuant to I.C.R. 35. Without exception, the district court denied Petitioners' claims for relief and each Petitioner appealed to this Court. This Court previously addressed all of Petitioners' appeals except Stuart's appeal and affirmed the district courts' orders of dismissal. All Petitioners, except Stuart, subsequently petitioned the U.S. Supreme Court for a writ of certiorari. The U.S. Supreme Court vacated the judgments and remanded the cases to this Court "for further consideration in light of *Danforth v. Minnesota*, 128 S.Ct. 1029 (2008)." *Rhoades v. Idaho*, ___ U.S. ___,128 S.Ct. 1441, 1441 (2008); *McKinney v. Idaho*, ___ U.S. ___, 128 S.Ct. 1441, 1441 (2008); *Pizzuto v. Idaho*, ___ U.S. ___, 128 S.Ct. 1441, 1441 (2008); *Card v. Idaho*, ___ U.S. ___, 128 S.Ct. 1442, 1442 (2008); *Hairston v. Idaho*, ___ U.S. ___, 128 S.Ct. 1442, 1442 (2008). This Court consolidated all of the remanded cases in the instant proceeding, in addition to considering Stuart's appeal.

## II. STANDARD OF REVIEW

This Court exercises free review over questions of law. *State v. Stover*, 140 Idaho 927, 929, 104 P.3d 969, 971 (2005). Statutory interpretation is a question of law over which this Court exercises free review. *Id.* (citing *State v. Yager*, 139 Idaho 680, 689, 85 P.3d 656, 665 (2004)). The constitutionality of Idaho's capital sentencing scheme is likewise a question of law

over which this Court exercises free review. *Id.* (citing *BHA Invs., Inc. v. State*, 138 Idaho 348, 351, 63 P.3d 474, 477 (2003)).

### III. ANALYSIS

In *Ring*, the United States Supreme Court held that the Sixth Amendment's jury trial guarantee requires that a jury find an aggravating circumstance necessary to impose the death penalty instead of a judge. 536 U.S. at 609. In *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004), the U.S. Supreme Court held that *Ring* announced a new procedural rule that did not apply retroactively to cases already final on direct review under the federal retroactivity doctrine. In *Porter v. State*, 140 Idaho 780, 102 P.3d 1099 (2004), this Court addressed whether *Summerlin* controlled the retroactivity of *Ring* in Idaho death penalty cases, or whether the Court was free to apply a more lenient standard of retroactivity than that applied by the U.S. Supreme Court. We held in *Porter* that the Sixth Amendment issue identified in *Ring* was based solely upon the Federal Constitution and, therefore, the retroactivity of *Ring* was a matter of federal law and not state law. *Id.* at 783, 102 P.3d at 1102.

In *Danforth*, the U.S. Supreme Court held that the federal retroactivity doctrine does not constrain the authority of state courts to give broader effect to new rules of criminal procedure than is required by *Teague v. Lane*, 489 U.S. 288 (1989). *Danforth*, 128 S.Ct. at 1042. The Court stated that "[s]tates are independent sovereigns with plenary authority to make and enforce their own laws as long as they do not infringe on federal constitutional guarantees." *Id.* at 1041. A state is thereby "free to give its citizens the benefit of [the U.S. Supreme Court's] rule in any fashion that does not offend federal law." *Id.* *Danforth* clarified that it is acceptable for states to give broader protection to defendants by applying state retroactivity law in state post-conviction proceedings. *Id.* at 1046. This Court must now decide whether it will give retroactive effect to the rule pronounced in *Ring* in state post-conviction proceedings in cases that were final on direct review when *Ring* was announced.

The first issue presented in this case is what standard this Court should use to decide whether Idaho courts will retroactively apply new rules of federal constitutional law in post-conviction proceedings. Petitioners, who contend that the State violated their rights under the Sixth Amendment when a judge sentenced them to death instead of a jury, ask this Court to employ Idaho's traditional three-part retroactivity test based upon *Linkletter v. Walker*, 381 U.S. 618 (1965), which this Court adopted in *Thompson v. Hagan*, 96 Idaho 19, 25, 523 P.2d 1365,

1371 (1974).[1]  The State argues that this Court should dismiss the instant appeals pursuant to I.C. § 19-2719(5)(c), or, in the alternative, that the Court should adopt the federal retroactivity standard of *Teague*, which bars the retroactive application of *Ring*.  Petitioners urge this Court to find that I.C. § 19-2719(5)(c) is unconstitutional.

We expressly adopt the retroactivity test from *Teague* for criminal cases on collateral review.  We conclude that, applying the *Teague* standard, the rule announced in *Ring* will not be given retroactive application in the instant cases.  Because we do not retroactively apply *Ring*, we decline to address whether I.C. § 19-2719(5)(c) requires this Court to dismiss Petitioners' appeals or whether the statute is unconstitutional.  In order to clarify the standards by which we evaluate whether new rules of law are to be given retroactive effect, we examine federal decisions addressing retroactivity, other states' analyses of retroactivity since *Danforth* and our past decisions considering retroactivity.

### A.  Federal Retroactivity Decisions

The U.S. Supreme Court expressly considered the issue of retroactivity for the first time in *Linkletter*.  *Danforth*, 128 U.S. at 1036.  The Court held that courts should determine the retroactive effect of each new rule on a case-by-case basis by weighing the purpose of the rule and the reliance of the States on the prior law against the effect on the administration of justice of retroactive application of the rule.  *Id*. at 1036-37.  This Court adopted the *Linkletter* retroactivity analysis in *Thompson*, 96 Idaho at 25, 523 P.2d at 1371.  The *Linkletter* test was criticized by scholars and members of the U.S. Supreme Court.  *Danforth*, 128 U.S. at 1037.  Justice Harlan noted that application of the *Linkletter* test produced different results depending on whether cases were subject to direct review, whether trials had commenced, whether tainted evidence had yet to be introduced at trial and other factors.  *Id*.  (citing *Desist v. U.S.*, 394 U.S. 244, 257 (1969) (Harlan, J., dissenting)).  This led the U.S. Supreme Court to characterize the *Linkletter* approach as "unprincipled and inequitable" in *Griffith v. Kentucky,* 479 U.S. 314 (1987).  *Id*.

A plurality of the Court in *Teague* adopted a new retroactivity approach.  *Id*.  *Teague* was later adopted by a majority of the Court.  *Penry v. Lynaugh*, 492 U.S. 302 (1989), *overruled on other grounds by Adkins v. Virginia*, 536 U.S. 304 (2002).  Under *Teague*, new constitutional

---

[1]  *Thompson v. Hagan* was a civil action in which the defendants sought a writ of mandate from this Court which would have compelled the district judge to apply the Idaho guest statute, now codified as I.C. § 49-2415.  96 Idaho at 20, 523 P.2d at 1366.  We do not decide today whether to abandon the *Linkletter* test when deciding civil cases other than post-conviction relief actions.

rules of criminal procedure are not applicable to those cases that have become final before the new rules are announced. *Danforth*, 128 U.S. at 1037-38 (quoting *Teague*, 489 U.S. at 310). There are two exceptions to this rule: rules that render types of primary conduct beyond the power of the criminal law-making authority to proscribe and watershed rules that implicate the fundamental fairness of the trial. *Id.* (quotations and citations omitted). This Court continued to use the *Linkletter* approach long after the U.S. Supreme Court abandoned it, most recently in *BHA Investments v. City of Boise*, 141 Idaho 168, 173, 108 P.3d 315, 320 (2004). The U.S. Supreme Court has applied the *Teague* standard to hold that *Ring* is not given retroactive effect as to cases that are final on direct review. *Schriro*, 542 U.S. at 358.

**B. Retroactivity approaches among the states post-*Danforth***

While this may change based on the Supreme Court's decision in *Danforth*, a large number of states and the District of Columbia have applied the *Teague* approach when considering claimed federal constitutional violations in state post-conviction proceedings. *See Ex parte Harris*, 947 So. 2d 1139 (Ala. 2005); *State v. Slemmer*, 823 P.2d 41 (Ariz. 1991); *Edwards v. People*, 129 P.3d 977 (Colo. 2006); *Duperry v. Solnit*, 803 A.2d 287 (Conn. 2002); *Flamer v. State*, 585 A.2d 736 (Del. 1990); *Davis v. Moore*, 772 A.2d 204 (D.C. 2001); *People v. Flowers*, 561 N.E.2d 674 (Ill. 1990); *Daniels v. State*, 561 N.E.2d 487 (Ind. 1990); *Brewer v. State*, 444 N.W.2d 77 (Iowa 1989); *Whisler v. State*, 36 P.3d 290 (Kan. 2001); *Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009); *State ex rel. Taylor v. Whitley*, 606 So. 2d 1292 (La. 1992); *Carmichael v. State*, 927 A.2d 1172 (Me. 2007); *State v. Adams*, 912 A.2d 16 (Md. Ct. Spec. App. 2006), *rev'd on other grounds,* 958 A.2d 295 (Md. 2006); *Commonwealth v. Bray*, 553 N.E.2d 538 (Mass. 1990); *Danforth v. State*, 761 N.W.2d 493 (Minn. 2009); *Manning v. State*, 929 So. 2d 885 (Miss. 2006); *State v. Egelhoff*, 900 P.2d 260 (Mont. 1995), *rev'd on other grounds sub nom. Montana v. Egelhoff,* 518 U.S. 37 (1996); *State v. Lotter*, 664 N.W.2d 892 (Neb. 2003); *State v. Forbes*, 119 P.3d 144 (N.M. 2005); *State v. Zuniga*, 444 S.E.2d 443 (N.C. 1994); *Clark v. State*, 621 N.W.2d 576 (N.D. 2001); *Burleson v. Saffle*, 46 P.3d 150 (Okla. Crim. App. 2002); *Miller v. Lampert*, 125 P.3d 1260 (Or. 2006); *Commonwealth v. Hughes*, 865 A.2d 761 (Pa. 2004); *Palin v. Vose*, 603 A.2d 738 (R.I. 1992); *Talley v. State*, 640 S.E.2d 878 (S.C. 2007); *Ex Parte Lave*, 257 S.W.3d 235, 237 (Tex. Crim. App. 2008); *Mueller v. Murray*, 478 S.E.2d 542 (Va. 1996); *State ex rel. Azeez v. Mangum*, 465 S.E.2d 163 (W. Va. 1995); *State v. Lagundoye*, 674 N.W.2d 526 (Wis. 2004).

6

Since the U.S. Supreme Court issued *Danforth*, a number of state courts have also reexamined what standard is appropriate when deciding the retroactive application of new rules of federal constitutional criminal procedure. On remand, in *Danforth v. State*, 761 N.W.2d 493, 497 (Minn. 2009), the Minnesota Supreme Court, which had previously applied *Teague*, examined the policy considerations behind *Teague* and elected to retain *Teague* as its retroactivity doctrine. The court noted that *Teague* was based on two primary policy interests: comity and finality. *Id.* (citing *Danforth*, 128 S.Ct. at 1040-41). States that have adopted *Teague* have often done so based on the important policy interest in finality. *Id.* (citing Mary C. Hutton, *Retroactivity in the States: The Impact of Teague v. Lane on State Postconviction Remedies*, 44 Ala. L. Rev. 421, 458-59, 461-62 (1993)). Other states have also adopted *Teague* based on the consideration of uniformity between state and federal rules. *Id.* (citing *State v. Slemmer*, 823 P.2d 41, 49 (Ariz. 1991); *People v . Bradbury*, 68 P.3d 494, 498 (Colo. Ct. App. 2002)). Alternatively, some states have found *Teague* too narrow or strict. *Id.* (citing *Colwell v. State*, 59 P.3d 463, 471 (Nev. 2002) (adopting a modified version of *Teague*)).

The Texas Criminal Court of Appeals had previously held that, under *Teague*, the right of confrontation under *Crawford* did not apply retroactively to claims raised in an application for writ of habeas corpus. *Ex Parte Lave*, 257 S.W.3d 235, 237 (Tex. Crim. App. 2008). The U.S. Supreme Court vacated and remanded the court's prior judgment in *Lave* for consideration in light of of *Danforth*. *Id.* at 236. On remand, the court concluded that federal law neither requires state courts to apply the holding in *Crawford* to cases that were final when that case was decided nor prohibits them from doing so. *Id.* at 237. Adhering to the previous retroactivity analysis, the court dismissed the defendant's application for writ of habeas corpus. *Id.*

In *State v. Smart*, 202 P.3d 1130 (2009), the Alaska Supreme Court examined the retroactivity of the U.S. Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296 (2004), which dealt with a defendant's Sixth Amendment right to a jury trial. The *Smart* Court concluded that *Danforth* permits states to apply either the *Teague* test for full retroactivity or a state constitutional test so long as the state test is at least as comprehensive as the federal test. 202 P.3d at 1136. The Court acknowledged Justice Harlan's criticism of *Linkletter* and noted that it may be difficult to defend the use of *Linkletter* in cases involving direct review on the state level. *Id.* at 1137-38. The Court went on to say that: "No party argues that any standard other than those discussed in *Teague* and [*Linkletter*] should be applied here on collateral review.

7

Absent meaningful argument on the issue, we decline to consider whether to apply some other standard . . . ." *Id*. at 1137. The Court nevertheless went on to apply the *Linkletter* test and concluded that *Blakely* was not retroactive under the *Linkletter* test. *Id*. at 1147.

In *People v. Maxson*, 759 N.W.2d 817 (2008), the Michigan Supreme Court examined the retroactivity of the U.S. Supreme Court decision in *Halbert v. Michigan*, 545 U.S. 605 (2005). The Court first concluded that *Halbert* was not retroactive under *Teague*. *Maxson*, 759 N.W.2d at 821. The Court then noted that under *Danforth*, states may accord broader effect to a new rule of criminal procedure than federal retroactivity jurisprudence accords. *Id*. at 822. Accordingly, the Court examined retroactivity under Michigan law, a three-pronged test based upon *Linkletter*. The Court held that the *Halbert* decision was not retroactive under its own three-pronged test. *Id*. at 827.

## C. Idaho's Retroactivity Doctrine

The parties disagree on which retroactivity test is controlling in the instant proceeding. This disagreement stems from the inconsistent approach that this Court has taken with respect to deciding questions of retroactivity. This Court currently applies the *Linkletter* standard to civil cases and a precursor to *Teague* in criminal cases. However, this Court has never expressly renounced its reliance on the *Linkletter* standard in criminal cases and has instead simply stopped applying it. We take this opportunity to clarify our approach to retroactivity. We now explicitly adopt the *Teague* standard in criminal cases on collateral review. Furthermore, we follow the lead of the Minnesota Supreme Court and hold that Idaho courts must independently review requests for retroactive application of newly-announced principles of law under the *Teague* standard.

This Court formally adopted the *Linkletter* standard in *Thompson*, 96 Idaho at 24, 523 P.2d at 1370, a civil case. This Court subsequently applied the *Linkletter* standard to criminal cases including collateral attacks on convictions. First in *State v. Whitman*, 96 Idaho 489, 531 P.2d 579 (1975), dealing with the retroactive application of *State v. French*, 95 Idaho 853, 522 P.2d 61 (1974), which held that a pre-sentence report of a defendant convicted of rape was deficient since it lacked a psychological evaluation and a schedule of rehabilitation alternatives. This Court most recently applied the *Linkletter* standard in a criminal case in *State v. Machen*, 100 Idaho 167, 595 P.2d 316 (1979), dealing with the retroactive application of *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978), which established that certain procedures must be followed

8

before a report is sent back to the sentencing judge in cases involving retained jurisdiction pursuant to I.C. § 19-2601.

Idaho's approach to retroactivity decisions took a curious turn in *Fetterly v. State*, 121 Idaho 417, 825 P.2d 1073 (1991). The defendant in *Fetterly* was convicted of first degree murder and sentenced to death. *Id*. at 417, 825 P.2d at 1073. This Court had previously upheld the defendant's death sentence on direct appeal and affirmed the district court's dismissal of the defendant's first petition for post-conviction relief. *Id*. The case dealt with the defendant's second petition for post-conviction relief, wherein the defendant argued that he was entitled to retroactive application of the rule pronounced in *State v. Charboneau*, 116 Idaho 129, 774 P.2d 299 (1989), which held that a trial court may sentence a defendant to death only if the trial court finds that all the mitigating circumstances do not outweigh the gravity of each of the aggravating circumstances. *Id*. at 417-18, 825 P.2d at 1073-74.

The *Fetterly* Court declined to give retroactive application to *Charboneau* because the defendant's case was final prior to the issuance of *Charboneau*. 121 Idaho at 419, 825 P.2d at 1075. The Court stated:

> The distinction between defendants whose cases were final before the issuance of *Charboneau* and those whose cases were not is a valid distinction. In *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987), the United States Supreme Court recognized this distinction as a proper basis for denying retroactive effect of new rules to cases that are already final. Therefore, the *Charboneau* interpretation of I.C. § 19-2515 does not apply to the present case because the present case was final prior to the issuance of *Charboneau*.

*Id*. at 418-19, 825 P.2d at 1074-75. The *Fetterly* Court did not discuss its prior reliance on the *Linkletter* standard in reaching its holding. Neither did the Court expressly adopt *Griffith*. The dissent, however, did criticize the majority for failing to analyze the case under the *Linkletter* standard. *Id*. at 421, 825 P.2d at 1077 (Bistline, J., dissenting).

The dissent also criticized the majority for applying *Griffith* instead of *Teague*. *Id*. at 420, 825 P.2d at 1076. In *Griffith*, the U.S. Supreme Court rejected the *Linkletter* standard and held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." 479 U.S. at 328. The U.S. Supreme Court later modified this approach to retroactivity in federal cases in *Teague*. 489 U.S. at 310. The curious aspect of this Court's decision in *Fetterly* is that it relied upon the holding in

9

*Griffith*, even though a majority of the U.S. Supreme Court had adopted the plurality approach from *Teague* in *Penry*, 492 U.S. at 302, prior to the point this Court decided *Fetterly*.

This Court reaffirmed *Fetterly*'s holding in *State v. Josephson*, 123 Idaho 790, 795, 852 P.2d 1387, 1392 (1993), when the Court stated:

> We hold that the [*State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992)] decision will be applied retroactively to all cases that had not become final when *Guzman* was issued, including those that were in progress in the trial courts. *See Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Fetterly v. State*, 121 Idaho 417, 825 P.2d 1073 (1991). Therefore, because this case was pending review at the time *Guzman* was released, the *Guzman* holding is controlling.

In dicta, this Court stated in *In re Gafford*, 127 Idaho 472, 903 P.2d 61 (1995), that *Teague* was controlling for purposes of retroactivity in Idaho. The Court stated:

> Even if the application of *Foucha* [*v. Louisiana*, 504 U.S. 71 (1992)] to this case did present a retroactivity problem, it would nonetheless apply to the terms of Gafford's present confinement. A new rule will be applied on collateral review if it requires the observance of procedures "implicit in the concept of ordered liberty." *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (quoting *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion)).

*Id.* at 476, 903 P.2d at 65. The "implicit in the concept of ordered liberty" language is from the first exception identified in *Teague*. Despite this statement, the following year this Court indicated in dicta that the *Griffith* approach adopted in *Fetterly* was still controlling when it stated in *Stuart v. State*, 128 Idaho 436, 914 P.2d 933 (1996):

> Even if [*State v. Tribe*, 123 Idaho 721, 852 P.2d 87 (1993)] had overruled *Stuart I* [*State v. Stuart*, 110 Idaho 163, 715 P.2d 833 (1985)], the fact that *Stuart I* was final when *Tribe* was issued would preclude retroactive application. *See Fetterly v. State*, 121 Idaho 417, 418-19, 825 P.2d 1073, 1074-75 (1991), *cert. den.* 506 U.S. 1002, 113 S.Ct. 607, 121 L.Ed.2d 542 (1992) (holding new decision on death penalty sentencing did not apply retroactively to already final cases).

*Id.* at 438, 914 P.2d at 935.

This Court again applied the *Griffith* rule adopted in *Fetterly* in *Butler v. State*, 129 Idaho 899, 935 P.2d 162 (1997). In *Butler*, the Court explained that the "*Fetterly* Court held that while this Court applied *Charboneau* to cases that were still open for sentencing on the date *Charboneau* was released, the defendant's case in *Fetterly* was finally decided." *Butler*, 129 Idaho at 901, 935 P.2d at 164. Because Butler's case was finally decided on direct review before this Court decided *State v. Townsend*, 124 Idaho 881, 865 P.2d 972 (1993), the Court declined to

10

grant Butler post-conviction relief based upon retroactive application of the holding in *Townsend*. *Butler*, 129 Idaho at 901-02, 935 P.2d at 164-65. Thus, it appears that this Court, although never having officially renounced its reliance on *Linkletter* in the criminal and post-conviction context, has moved away from *Linkletter*.

When deciding between our choices to formally adopt *Teague* or revive the *Linkletter* approach to retroactivity in criminal cases we consider the interests of comity and finality that contributed to the U.S. Supreme Court's adoption of the standard announced in *Teague*. Petitioners argue that the *Teague* rule was fashioned by the U.S. Supreme Court in order to avoid excessive interference by federal habeas courts with state criminal convictions that have become final. However, the courts of this state do not have the power to interfere with convictions in other states. Accordingly, the considerations of comity between federal and state courts that may have contributed to the *Teague* decision simply have no application to the decision we make today.

The State argues that this Court should adopt *Teague* in order to provide uniformity in Idaho's application of new rules of criminal law and eliminate a confusing standard that the U.S. Supreme Court and many of our sister states have abandoned and that the *Teague* standard promotes the finality of judgments.

When contrasted with the *Linkletter* approach, it is evident that *Teague* provides a simpler and more predictable test for determining whether decisions are given retroactive effect. The *Teague* approach advances an important interest: the finality of judgments. The *Teague* approach generally avoids the retroactive application of a new rule of law to judgments, based upon trials that were not fundamentally unfair and had adequate truth-finding procedures, that were final when the new rule was announced.

It is difficult to overstate the importance of finality of judgments. As the U.S. Supreme Court noted in *Teague*:

> Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect. The fact that life and liberty are at stake in criminal prosecutions "shows only that 'conventional notions of finality' should not have as much place in criminal as in civil litigation, not that they should have none."

11

489 U.S. at 309 (emphasis in original) (quoting Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attacks on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 150 (1970)). We also take note of Justice Harlan's comments in *Mackey v. U.S.*

> A rule of law that fails to take account of these finality interests would do more than subvert the criminal process itself. It would also seriously distort the very limited resources society has allocated to the criminal process. While men languish in jail, not uncommonly for over a year, awaiting a first trial on their guilt or innocence, it is not easy to justify expending substantial quantities of the time and energies of judges, prosecutors, and defense lawyers litigating the validity under present law of criminal convictions that were perfectly free from error when made final. This drain on society's resources is compounded by the fact that issuance of the habeas writ compels a State that wishes to continue enforcing its laws against the successful petitioner to relitigate facts buried in the remote past through presentation of witnesses whose memories of the relevant events often have dimmed. This very act of trying stale facts may well, ironically, produce a second trial no more reliable as a matter of getting at the truth than the first.

401 U.S. 667, 691 (1971) (separate opinion of Harlan, J.) (citations omitted).

We adopt the *Teague* approach when determining whether decisions of the U.S. Supreme Court and the appellate courts of this state should be given retroactive effect. We acknowledge that the decision in *Teague* has not avoided criticism. The Nevada Supreme Court noted that the U.S. Supreme Court has applied *Teague* so strictly "that decisions defining a constitutional safeguard rarely merit application on collateral review." *Colwell v. State*, 59 P.3d 463, 471 (Nev. 2002). While considering the *Teague* approach sound in principle, the Nevada Supreme Court leveled two main criticisms of the U.S. Supreme Court's application of *Teague*. First, the U.S. Supreme Court interprets a "new rule" so broadly that most rules are considered new and given only prospective effect, absent an exception. *Id*. The Court considers a decision new even when it is controlled or governed by prior law and is the most reasonable interpretation of that law, unless no other interpretation is reasonable. *Id*. (citing *Butler v. McKellar*, 494 U.S. 407, 415 (1990); *Lambrix v. Singletary*, 520 U.S. 518, 538 (1997)). Second, the U.S. Supreme Court narrowly construes the two exceptions. *Id*. One exception applies when primary, private individual conduct has been placed beyond criminal proscription. *Id*. (quoting *Teague*, 489 U.S. at 311). The other applies only to watershed rules of fundamental fairness. *Id*. In order to qualify as a watershed rule of fundamental fairness, a rule must improve accuracy and alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding. *Id*.

The U.S. Supreme Court has found no watershed rules in the 19 years since it adopted *Teague*. *Danforth*, 761 N.W.2d at 500.

While the U.S. Supreme Court has strictly interpreted *Teague* to avoid excessive interference by federal habeas courts in state criminal convictions that have become final, this Court does not have a similar concern for comity when interpreting whether a decision pronounces a new rule of law for purposes of applying *Teague*. As the holding in *Danforth v. Minnesota,* 552 U.S. 264, 128 S.Ct. 1029 (2008), makes clear, when deciding whether to give retroactive effect to a decision of the U.S. Supreme Court, this Court is not required to blindly follow that court's view of what constitutes a new rule or whether a new rule is a watershed rule.

Rather, in the future, the decisions of the courts of this state whether to give retroactive effect to a rule of law should reflect independent judgment, based upon the concerns of this Court and the "uniqueness of our state, our Constitution, and our long-standing jurisprudence." *State v. Donato*, 135 Idaho 469, 472, 20 P.3d 5, 8 (2001) (noting that when this Court has found that the Idaho Constitution provides greater protection than the U.S. Constitution, it has done so, "on the uniqueness of our state, our Constitution, and our long-standing jurisprudence"). We note that the Minnesota Supreme Court will likewise independently review cases when applying the *Teague* standard. *Danforth*, 761 N.W. 2d 500.[2]

### D. We hold that *Ring* is not to be given retroactive effect.

Under *Teague*, decisions by the U.S. Supreme Court announcing a new rule apply to all criminal cases still pending on direct review. *Schriro*, 542 U.S. at 351. The new rule, however, only applies to final convictions in limited circumstances. New substantive rules generally apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Id*. at 352 (internal quotations omitted)). New procedural rules generally do not apply retroactively because "[t]hey do not produce a class of persons convicted of conduct the

---

[2] Although not discussed by any party, we also note that the Nevada Supreme Court has adopted a modified version of *Teague*. *Colwell*, 59 P.3d at 472. The *Colwell* Court widened *Teague*'s first exception, which is that a new rule is given retroactive effect if the rule establishes that it is unconstitutional to proscribe certain "primary, private individual conduct" as criminal. *Id*. The Court said other conduct beyond primary, private, individual conduct might also be protected from criminalization and warrant retroactive relief. *Id*. Turning to the second exception, the Court eliminated the requirement that new rules of criminal procedure have "watershed" or "bedrock" significance. The Court stated that "if accuracy is seriously diminished without the rule, the rule is significant enough to warrant retroactive application." *Id*. The Minnesota Supreme Court chose not to adopt Nevada's modified version of *Teague* out of concern that it would only lead to the same problems that accompanied the *Linkletter* standard. *Danforth*, 761 N.W.2d at 499. For similar reasons, we also decline to adopt the approach announced in *Colwell*.

13

law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id*. This is a more speculative connection to innocence and, therefore, retroactivity is only given to a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. *Id*. (citations and quotations omitted). The procedural rule "must be one 'without which the likelihood of an accurate conviction is *seriously* diminished.'" *Id*. (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990) (emphasis in original). This is an extremely narrow class. *Id*.

A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes. *Id*. at 353. In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural. The U.S. Supreme Court classified *Ring* as a new procedural rule. *Id*. *Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable by death. The ruling did not alter the range of conduct subjected to the death penalty. *Id*. The *Ring* ruling is based upon the Sixth Amendment's jury-trial guarantee, a provision that does not implicate the range of conduct a State may criminalize. *Id*. Therefore, we also conclude that *Ring* announced a new procedural rather than substantive rule.

The rule announced in *Ring* is also not subject to any exception to *Teague* including the exception for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id*. at 355. (citation and quotations omitted). The defendant in *Schriro* argued that juries are more accurate fact finders than judges and therefore the new *Ring* rule fell under this exception. *Id*. The Court examined the question whether judicial factfinding so "seriously diminishe[s] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." *Id*. (citations and quotations omitted). The Court noted that there is a debate as to whether juries are better factfinders than judges at all and could not confidently say that judicial factfinding seriously diminishes accuracy. *Id*. at 356. We agree.

We also note that that while we adopt the U.S. Supreme Court's interpretation of *Ring* in this instance, we are still committed to independently analyzing requests for retroactive application of newly-announced principles of law with regard for the uniqueness of our state, our Constitution and our long-standing jurisprudence. However, jury participation in the sentencing process of a capital case is not required under the Idaho Constitution. *Porter*, 140 Idaho at 783, 102 P.3d at 1102 (citing *State v. Hoffman*, 123 Idaho 638, 643, 851 P.2d 934, 939 (1993); *State*

14

*v. Pizzuto*, 119 Idaho 742, 770, 810 P.2d 680, 708 (1991)). Accordingly, this Court's independent analysis of the *Teague* standard yields the same result as the U.S. Supreme Court.

## IV. CONCLUSION

We adopt *Teague*, conclude that *Ring* is not retroactive under Idaho law and affirm the district courts' denial of Petitioners' requests for relief.

Chief Justice EISMANN, Justices BURDICK, W. JONES and Justice Pro Tem TROUT **CONCUR**.