## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46665

JAMES HARVEY HAIRSTON,      )
                                              )      **Boise, May 2020 Term**
          Petitioner-Appellant,      )
v.                                    )      **Opinion Filed: September 3, 2020**
                                              )
STATE OF IDAHO,              )      **Melanie Gagnepain, Clerk**
                                              )
          Respondent.             )      **SUBSTITUTE OPINION. THE**
                                          )      **COURT'S PRIOR OPINION**
                                          )      **DATED JULY 6, 2020 IS**
                                          **HEREBY WITHDRAWN.**

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Robert C. Naftz, District Judge.

The district court's dismissal of Hairston's petition for post-conviction relief is <u>affirmed</u>.

Federal Public Defender Services of Idaho, Boise, attorneys for Appellant. Jonah Horwitz argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. Lamont Anderson argued.

---

BEVAN, Justice

### I. NATURE OF THE CASE

This is a successive claim for post-conviction relief in a capital case. James Hairston was sentenced to death after a jury convicted him of two counts of first-degree murder in connection with the deaths of William and Dalma Fuhriman. Hairston was about nineteen and a half when he killed the Fuhrimans. In this, his fourth post-conviction petition, Hairston argues his sentence is unconstitutional because: (1) he was under the age of twenty-one at the time of the offense; and (2) the trial court failed to give adequate consideration to the mitigating factors that must be considered with youthful defendants. The district court dismissed Hairston's first claim after holding that he failed to show that evolving standards of decency prohibited imposing the death penalty for offenders between the ages of eighteen and twenty-one. The court dismissed Hairston's second claim after finding that there was no basis to extend the special sentencing

1

considerations that have been specifically limited to juvenile defendants under eighteen to those under twenty-one. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This Court summarized the facts leading to Hairston's conviction in *State v. Hairston*, 133 Idaho 496, 988 P.2d 1170 (1999) (*Hairston I*):

> On January 6, 1996, Hairston and a companion, Richard Klipfel, were driving from Grand Junction, Colorado, to Spokane, Washington. They stopped at the Fuhrimans' ranch because they had run out of money and could not continue their journey. The Fuhrimans invited Hairston and Klipfel into their home and offered to help them find jobs. While Mr. Fuhriman was sitting at a kitchen table looking at a phone book, Hairston shot him in the head and then shot Mrs. Fuhriman. Hairston and Klipfel took $30 in cash, credit cards, and some personal property from the Fuhrimans' home and continued their journey. Hairston and Klipfel pawned some of the Fuhrimans' property. They purchased several items with the credit cards including toy remote control cars, tires, food, gas, and lodging. They also attempted to purchase a Harley Davidson motorcycle and $2500 worth of snowboarding equipment, but the credit card was rejected. Hairston and Klipfel were apprehended together near Clarkston, Washington, three days after the murders.

133 Idaho at 500–01, 988 P.2d at 1174–75. On September 6, 1996, a jury found Hairston guilty of two counts of first-degree murder and one count of robbery. *Id.* at 501, 988 P.2d at 1175. The district court imposed a death sentence for each of the two murders and life in prison for the robbery. *Id.* Hairston was just over nineteen and a half years old at the time of the murders.

### 1. *Prior claims for post-conviction relief*

In 1996, Hairston brought his first petition for post-conviction relief, which was denied. Hairston appealed his conviction and the district court's denial of his post-conviction petition to the Idaho Supreme Court. In 1999, this Court affirmed the district court's denial of post-conviction relief and upheld Hairston's convictions and death sentences on direct appeal. *Hairston I*, 133 Idaho at 518–19, 988 P.2d at 1192–93.

In 2000, Hairston filed a federal habeas corpus petition, which the U.S. district court dismissed. *Hairston v. Blades*, No. 1:00-CV-00303-BLW, 2011 WL 1219267, at *32 (D. Idaho Mar. 30, 2011). In 2018, the Ninth Circuit vacated the district court's order and remanded for the court to apply *Martinez v. Ryan,* 566 U.S. 1 (2012), to Hairston's claim that his trial counsel was ineffective in investigating and presenting mitigation evidence at sentencing. *Hairston v. Ramirez*, 746 F. App'x 633, 634 (9th Cir. 2018).

In 2001, Hairston filed a second petition for post-conviction relief in state court, alleging that he had been deprived of his constitutional right to the effective assistance of counsel on direct appeal and that he had been denied adequate resources during the sentencing hearing and the first post-conviction proceeding. In 2002, Hairston filed a third petition for post-conviction relief, alleging that his death sentence was unconstitutional under *Ring v. Arizona*, 536, U.S. 584 (2002), which concluded statutory aggravating factors must be found by a jury, rather than the court. *Hairston v. State*, 144 Idaho 51, 54, 156 P.3d 552, 555 (2007) (*Hairston II*). The district court dismissed both petitions as untimely under Idaho Code section 19-2719. *Id*. In a consolidated appeal, this Court held that Hairston failed to raise his claims in a timely manner, thus, the consolidated appeals were dismissed. *Id*. at 59, 156 P.3d at 560. The United States Supreme Court vacated and remanded *Hairston II* because of *Danforth v. Minnesota*, 552 U.S. 264 (2008), but only as to the *Ring* claim. *Hairston v. Idaho*, 552 U.S. 1227 (2008). The district court dismissed Hairston's claim seeking to vacate his death sentence. Hairston's case was consolidated with several others for appeal, and this Court affirmed the district court after concluding *Ring* is not retroactive. *Rhoades et al. v. State*, 149 Idaho 130, 140, 233 P.3d 61, 71 (2010).

### 2. Current claim for post-conviction relief

On March 16, 2018, Hairston filed a fourth post-conviction petition, contending: (1) it is unconstitutional to execute someone who was under the age of twenty-one at the time of the offense; and (2) the trial court failed to give adequate consideration to the mitigating factors that must be considered with youthful defendants. The State filed an answer alleging, among other affirmative defenses, that Hairston's petition was barred by the statute of limitations in Idaho Code section 19-4902(a). Later, the State moved for summary dismissal under Idaho Code section 19-4906(c).

Hairston later filed an amended petition for post-conviction relief, which raised the same claims, but included additional evidentiary support for his assertion that the Idaho trial courts had evolved beyond the practice of sentencing late-adolescent defendants to death. In part, Hairston submitted an affidavit from Laurence Steinberg, Ph.D., an expert in adolescent development, who concluded that the new, emerging medical and scientific consensus across the country is that defendants between the ages of eighteen and twenty-one are just as deserving of constitutional protection from the death penalty as those defendants eighteen and younger.

3

Hairston alleged that the basis for his petition arose from American Bar Association (ABA) Resolution 111, adopted by its House of Delegates on February 5, 2018, which "urges each jurisdiction that imposes capital punishment to prohibit the imposition of a death sentence on or execution of any individual who was [twenty-one] years old or younger at the time of the offense." The district court took judicial notice of Hairston's exhibits.

After answering Hairston's amended petition, the State again moved for summary dismissal under Idaho Code section 19-4906(c). The State argued Hairston's claims were time-barred and that the authority he relied on was inapplicable to his claims because it only applied to juvenile defendants and Hairston was nineteen at the time of his crimes.

On December 17, 2018, the district court entered an order denying post-conviction relief. The court declined to dismiss Hairston's petition on the grounds that it was untimely, but ultimately dismissed his claims on the merits. The district court dismissed Hairston's first claim after concluding he failed to show that his death sentence diverged from national and Idaho evolving standards of decency. The court dismissed Hairston's second claim after finding that there was no basis to extend the special sentencing considerations that have been specifically limited to juvenile defendants under eighteen to those under twenty-one. Hairston filed a timely notice of appeal to this Court.

### III. ISSUES ON APPEAL

1. Is Hairston's successive petition for post-conviction relief time-barred?

2. Is Hairston's death sentence unconstitutional because he was under twenty-one at the time of the offense?

3. Is Hairston's sentence unconstitutional because the district court failed to give proper consideration to the mitigating factors associated with his youth?

### IV. STANDARD OF REVIEW

The constitutionality of Idaho's capital sentencing scheme is a question of law over which this Court exercises free review. *Rhoades v. State*, 149 Idaho 130, 132, 233 P.3d 61, 63 (2010). Idaho Code section 19-4906 authorizes summary disposition of an application for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact which, if resolved in the applicant's favor, would entitle the applicant to the requested relief. *Cole v. State*, 135 Idaho 107, 110, 15 P.3d 820, 823 (2000) (internal citation omitted). Thus, "[s]ummary dismissal sought under the UPCPA [Uniform Post-Conviction

4

Procedure Act] is the procedural equivalent of a motion for summary judgment." *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004). In determining whether a motion for summary dismissal is properly granted, a court must review the facts in a light most favorable to the petitioner, and determine whether they would entitle petitioner to relief if accepted as true. *Ferrier v. State*, 135 Idaho 797, 799, 25 P.3d 110, 112 (2001) (internal citation omitted). "A court is required to accept the petitioner's unrebutted allegations as true, but need not accept the petitioner's conclusions." *Id*.

## V. ANALYSIS

**A.** **The State failed to adequately argue Hairston's successive post-conviction petition was time-barred below; thus, its argument that Hairston's petition is untimely will not be considered on appeal.**

Idaho Code section 19-2719 sets forth discrete post-conviction procedures that govern all capital cases. Capital post-conviction proceedings, like non-capital post-conviction proceedings, which are governed by the UPCPA, Idaho Code sections 19-4901–4911, are civil in nature and except for discovery matters are governed by the Idaho Rules of Civil Procedure. I.C.R. 39(b); I.C. § 19-4907(a). Idaho Rule of Civil Procedure 8(c)(1)(Q) provides that the statute of limitations is an affirmative defense which must be "affirmatively state[d]" in a party's answer. "[T]he time bar of the statute of limitations is an affirmative defense that may be waived if it is not pleaded by the defendant." *Cole v. State*, 135 Idaho 107, 110, 15 P.3d 820, 823 (2000) (internal citation omitted).

The narrow and demanding statute of limitations set forth in Idaho Code section 19-2719(3) and (5) require that "[a] petitioner bringing a successive petition for post-conviction relief has a heightened burden and must make a *prima facie* showing that issues raised in that petition fit within the narrow exception provided by the statute." *Pizzuto v. State*, 127 Idaho 469, 471, 903 P.2d 58, 60 (1995) (*Pizzuto II*). We have held that the narrow exception requires successive post-conviction petitions be filed within a "reasonable time," which

> is forty-two days after the petitioner knew or reasonably should have known of the claim, unless the petitioner shows that there were extraordinary circumstances that prevented him or her from filing the claim within that time period. In that event, it still must be filed within a reasonable time after the claim was known or knowable.

*Pizzuto v. State*, 146 Idaho 720, 727, 202 P.3d 642, 649 (2008) (*Pizzuto V*). The State argues on appeal that Hairston's amended successive petition is untimely under Idaho Code section 19-

2719(5) and this authority. The State asserts generally that Hairston's claims were known or reasonably could have been known when he filed his first post-conviction petition.

The difficulty for the State in raising this argument now is that the statute of limitations argument it makes on appeal was asserted only in passing before the district court during oral argument. No pleading filed by the State included section 19-2719 as a bar to Hairston's petition. In fact, the State raised the inapt general statute of limitations set forth in Idaho Code section 19-4902(a), rather than the specific statute of limitations that is applicable to post-conviction actions in capital cases.

Beyond that, when moving for summary dismissal below, the extent of the State's timeliness argument was that Hairston's "claims and allegations are moot and should be procedurally foreclosed as [Hairston's] application for post-conviction relief is time barred, is a successive petition, and contains claims that were or could have been raised in previous proceedings." In making these generic statements, the State failed to cite to the specific statute governing post-conviction procedures in capital cases, nor did it offer any support for its conclusory claims. In its response memorandum, the State was required to state its defense "with particularity[, including] the grounds for the relief sought [and] the number of the applicable civil rule." I.R.C.P. 7(b)(1)(B). In the same vein, the State made no specific argument below that the newly discovered issues raised by Hairston were known or reasonably should have been known outside the limited forty-two-day time limit for raising those successive post-conviction claims. We thus affirm the district court's determination that the State's cursory statements and lack of specific argument did not provide sufficient notice for summary disposition under Idaho Code section 19-4906(c). We therefore reach the merits of Hairston's argument on appeal.

### B.     Hairston's death sentence is constitutional.

Hairston's primary argument is that the constitutional prohibition against executing juvenile defendants under the age of eighteen announced in *Roper v. Simmons*, 543 U.S. 551 (2005), should be extended to defendants who were under the age of twenty-one when they committed their crimes. In *Roper*, the U.S. Supreme Court extended the previous prohibition against executing juveniles under the age of sixteen set forth in *Thompson v. Oklahoma*, 487 U.S. 815 (1988), to include juvenile offenders under the age of eighteen. The foundation for the

Court's analysis, and for ours today, is grounded in the Eighth Amendment[1] – and by principles the U.S. Supreme Court articulated for the first time in 1958 in *Trop v. Dulles*, 356 U.S. 86 (1958). The Court there recognized that "the [Eighth] Amendment must draw its meaning from the *evolving standards of decency* that mark the progress of a maturing society." *Id*. at 101 (emphasis added). This standard has continued to inform the Supreme Court as it limited the death penalty for juveniles in *Thompson* and *Roper*, as well as in more recent cases of *Graham v. Florida*, 560 U.S. 48 (2010) (holding that the Eighth Amendment prohibits imposition of life without parole sentence on juvenile offender who did not commit homicide) and *Miller v. Alabama*, 567 U.S. 460 (2012) (holding that mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishment).

Hairston argues that evolving standards of decency support his claim that the death penalty is unconstitutional when imposed against an individual who is under twenty-one years of age at the time of his crime. His arguments rely upon information from several fronts. First, he relies heavily upon a report of Dr. Steinberg, which argues that there is a new emerging consensus that many aspects of psychological and neurobiological immaturity characteristic of early adolescents and middle adolescents are also characteristics of late adolescents aged nineteen and twenty. Hairston also claims that his sentence is inconsistent with evolving standards of decency, both nationally and in Idaho, which show that imposition of the death penalty for adolescent offenders is disfavored. In addition, Hairston cites to the American Bar Association House of Delegate's recently passed Resolution 111, which advocates "each jurisdiction that imposes capital punishment to prohibit the imposition of a death sentence on or execution of any individual who was 21 years old or younger at the time of the offense." The Resolution, like Dr. Steinberg, advocates that the brains of those under twenty-one are so immature that all individuals under twenty-one are undeserving of death sentences.

Hairston adds that there are also emerging national, international, and state trends against the imposition of the death penalty on defendants who were under the age of twenty-one at the time of their offense. Hairston cites jurisdictions that have abolished the death penalty altogether,

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S.Const., Amend. VIII

suspended executions through moratoria, and those that no longer impose or carry out capital sentences for offenders under twenty-one. Hairston also highlights several non-criminal statutes that he claims support the idea that those under twenty-one do not have enough maturity to be treated as adults. Beyond national statistics, Hairston also cites some international developments to contend there is a strong trend against the death penalty worldwide, which is by definition a trend against the execution of defendants in late adolescence as well.

In addition, Hairston asserts there is Idaho-specific evidence that defendants who were under twenty-one at the time of their crime should not be sentenced to death. Specifically, since the time Hairston received his sentence, apparently no other defendant under twenty-one has received the death penalty, while eleven defendants over the age of twenty were sentenced to death. Hairston argues this results from decisions by several different actors, including prosecutors, judges, and juries, that all reflect the sentiments of Idaho citizens opposing the death penalty for late-adolescents.

While we are not blind to the national and international trends, and even those Idaho-centric cases which arguably show that offenders who were under the age of twenty-one at the time of the offense are rarely given the death penalty, Hairston has provided no evidence that a consensus exists among those states that continue to exercise the death penalty about this issue. We have recognized "absent some legislative or executive action, a determination by this Court that Idaho's death penalty statute is unconstitutional based on evolving standards of decency and public opinion is unsupported." *State v. Abdullah*, 158 Idaho 386, 456, 348 P.3d 1, 71 (2015). We continue to follow this view.

Hairston has not cited to any legislative enactments or executive action since *Roper* that have made executing nineteen and twenty-year-olds as a class by themselves unconstitutional.[2] We have in the past, and we continue to subscribe to the views of legislative bodies as the basis for determining a national consensus; and no such consensus exists among those states that still regard the death penalty itself as a valid form of punishment. Nor has Hairston cited to any case of meaningful precedential value that has extended *Roper* as he advocates we should do here.[3]

---

[2] We recognize some states have adopted statutes or executive branch moratoria against the death penalty in all its forms since 2005 when *Roper* was decided.

[3] Hairston referenced a trial court decision out of Kentucky, *Commonwealth v. Bredhold*, 2017 WL 8792559 (Ky. Cir. Ct. Aug. 01, 2017), which declared Kentucky's death penalty statute unconstitutional as applied to those under

Indeed, there are none. *See*, *e.g.*, *People v. Harris*, 120 N.E.3d 900, 914 (Ill. 2018) (noting that courts have repeatedly rejected claims to extend *Roper* and its progeny to offenders over the age of 18). Like the Illinois Supreme Court, "[w]e agree with those decisions . . . that, for sentencing purposes, the age of 18 marks the present line between juveniles and adults." *Id.*

Most importantly, we believe that the Supreme Court of the United States has definitively spoken on this issue. Idaho courts have traditionally tracked the U.S. Supreme Court's Eighth Amendment jurisprudence. *State v. Draper*, 151 Idaho 576, 599, 261 P.3d 853, 876 (2011). In *Roper*, the Court held that eighteen years is "the age at which the line for death eligibility ought to rest." 543 U.S. at 574. In the fifteen years since that time, the Supreme Court has not seen fit to recognize that a national consensus exists sufficient to move the line to twenty-one years. Neither do we.

We understand that this view is not without its detractors in academia, the American Bar Association, and other circles opposed to capital punishment. We also acknowledge, as has the Supreme Court, the problem with drawing the line at the age of 18 years as a "categorical rule":

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, *a line must be drawn*. The plurality opinion in *Thompson* drew the line at 16. In the intervening years the *Thompson* plurality's conclusion that offenders under 16 may not be executed has not been challenged. The logic of *Thompson* extends to those who are under 18. *The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.*

*Id.* (Emphasis added).

Since *Roper* was decided, the Supreme Court has continued to identify 18 years as the critical age for purposes of Eighth Amendment jurisprudence. *See Miller v. Alabama*, 567 U.S. 460, 465 (2012) (prohibiting mandatory sentences of life without parole for homicide offenders who committed their crimes before the age of eighteen); *see also Graham v. Florida*, 560 U.S. 48, 74–75 (2010) (prohibiting sentences of life without parole for nonhomicide offenders who

twenty-one. *Id.* at * 1. However, the Kentucky Supreme Court subsequently vacated that decision. *Commonwealth v. Bredhold*, 599 S.W.3d 409, 423 (Ky. 2020).

committed their crimes before the age of eighteen). We have done likewise. *See State v. Shanahan*, 165 Idaho 343, 445 P.3d 152, *cert. denied*, 140 S. Ct. 545 (2019) (sentence of indeterminate life with 35-years fixed does not violate the Eighth Amendment under *Miller*'s rationale). Because the Supreme Court of the United States has not determined that the age of eligibility for capital punishment should be moved, we will continue to adhere to *Roper*. Thus, we hold that Hairston's death sentence is constitutional.

Although we have rejected a categorical exception for those under twenty-one who have been sentenced to death, Hairston asks this Court to vacate his death sentence based on his personal lack of maturity at the time of the murders. In support, Hairston cites to Dr. Steinberg's report, which analyzed his conduct before, during and after the offense and concludes it demonstrated the hallmarks of adolescence and significant immaturity. However, in drawing the line at eighteen the Supreme Court recognized "qualities that distinguish juveniles from adults do not disappear when an individual turns 18." 543 U.S. at 574. Hairston has failed to present any legal authority to show the immaturity he exhibited as an adult provides him special immunity from the bright-line rule excluding juveniles from the death penalty who were under the age of eighteen at the time of the capital offense. Therefore, we affirm the district court's rejection of Hairston's request for a special exemption from the categorical rule.

Finally, Hairston asks this Court to remand the case because the district court applied an incorrect legal standard in evaluating his claim. Hairston claims the district court erred by employing "a presumption in favor of the State," under which the court was "obligated to seek an interpretation" that foreclosed the aggrieved party's claims and only granted relief "in clear cases." Hairston also asserts that based on the vast body of uncontested evidence proving the merits of his first claim, he is entitled to relief as a matter of law. Hairston's arguments are unconvincing.

While "a court is required to accept the petitioner's unrebutted allegations as true," it "need not accept the petitioner's conclusions." *Ferrier v. State*, 135 Idaho 797, 799, 25 P.3d 110, 112 (2001). The district court appropriately analyzed the facts presented and came to its own conclusion as to the lack of a consensus in support of abolishing the death penalty for those under the age 21 years based on evolving standards of decency. Further, even if the district court applied the incorrect standard to reach this conclusion, remand is unnecessary because we have reviewed the constitutional issues decided today under an independent, de novo standard of

10

review. *State v. Sepulveda*, 161 Idaho 79, 82, 383 P.3d 1249, 1252 (2016) (quoting *Draper*, 151 Idaho at 598, 261 P.3d at 875).

We likewise reject Hairston's request to remand the case for an evidentiary hearing. Hairston argues that if we accept all of his allegations as true and draw all inferences liberally in his favor, he has presented extensive information to suggest there is a consensus against executing adolescents, which warrants an evidentiary hearing. Hairston's argument ignores the fact that the Court must "express its own independent determination" about what categories of defendants are shielded from the death penalty by the evolving standards of decency. *Hall v. Florida*, 572 U.S. 701, 710 (2014). This is a question of law, which is suitable for disposition on the pleadings and the facts in the record. *Matthews v. State*, 113 Idaho 83, 85, 741, P.2d 370, 372 (1987) (citing *Smith v. State,* 94 Idaho 469, 491 P.2d 733 (1971)). As we held above, we continue to follow the Supreme Court's holding in *Roper*, that 18 years is the minimum age for a person against whom the death penalty may be imposed.

**C.      Hairston had no right to consideration of the special sentencing factors applicable to juvenile offenders under the age of eighteen because he was nineteen at the time of his offense.**

As a second basis for relief, Hairston argues that because of his age he was constitutionally entitled to probing consideration of the features associated with youthfulness before he received his punishment. In support of his argument, Hairston relies on case law that has been specifically limited to adolescent offenders under the age of eighteen. Mainly, Hairston relies on *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), in which the U.S. Supreme Court set forth specific factors the judge must consider when sentencing juvenile offenders under 18 years of age to life without parole. Hairston acknowledges that *Montgomery* concerned offenders under the age of 18 at the time of their offense, but reiterates his argument that the 18-year-old cutoff for capital cases is no longer consistent with evolving standards of decency. We have already rejected this claim on the merits. Hairston was 19 at the time of his offense, thus, the sentencing factors specifically applicable to defendants under the age of 18 at the time of their offense do not apply to Hairston's case.

## VI. CONCLUSION

We affirm the district court's dismissal of Hairston's petition for post-conviction relief.

Chief Justice BURDICK and Justices BRODY, STEGNER and MOELLER, CONCUR.