# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48522

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Coeur d'Alene, Sept. 2022 Term |
| | ) | |
| v. | ) | Opinion filed: May 2, 2023 |
| | ) | |
| STACY LEE INGRAHAM, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. John T. Mitchell, District Judge.

The judgment of the district court is <u>affirmed in part and vacated in part</u>. The case is remanded for further proceedings.

Phelps & Associates, Spokane, WA, for Appellant. Douglas Phelps argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kale Gans argued.

_____

BRODY, Justice.

Defendant Stacy Lee Ingraham appeals her convictions and sentences, arguing she was denied her right to a public trial under both the Idaho and U.S. constitutions. She also asserts the district court erred by publishing a video exhibit to the jury after it began deliberations. Additionally, she contends the district court erred in allowing the jury to consider a prior felony conviction for purposes of a persistent violator enhancement where that conviction had previously been "deemed" a misdemeanor pursuant to Idaho Code section 19-2604. For the reasons explained below, we affirm the judgment of conviction in part, but vacate that part of the judgment imposing sentence and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 6, 2020, at approximately 12:45 AM, a Kootenai County sheriff's deputy was patrolling Highway 53 near Rathdrum, Idaho, when he observed a vehicle fail to stop at a stop sign. He initiated a traffic stop. The driver was Stacy Lee Ingraham. A passenger was also in the

1

vehicle. On making contact with Ingraham, the deputy smelled "the very strong odor" of marijuana from within Ingraham's vehicle. He then returned to his patrol vehicle, requested a cover unit, and completed Ingraham's citation for the traffic violation. On returning to her vehicle, he asked Ingraham and the passenger to exit the vehicle and wait with another officer while he conducted a search.

The deputy found marijuana on the driver's seat, in the center console, and in the trunk. He also found a marijuana pipe on the passenger seat and a broken lock box on the back seat. The lock box was damaged and looked "forced open." Inside it were numerous papers, including vehicle information, employment records, mail, paycheck stubs, and a diploma, all belonging to a third party. He then told Ingraham of his findings and advised her of her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) (her "*Miranda*" rights). Ingraham told the deputy that the lockbox and marijuana were both hers, informing him that she obtained the lockbox at a yard sale one year ago but had to damage it to open it. She also claimed that she had recently loaned the lockbox to an "unknown friend," which would account for the third party paperwork inside.

Upon hearing Ingraham admit to owning the marijuana, the deputy arrested Ingraham and placed her, handcuffed, in his patrol vehicle. When he went back to the car's passenger to place him under arrest, the passenger "immediately became resistant." The passenger pulled away, refused to give up his hands, and caused both he and the deputy to fall to the ground. The deputy and two other officers had to wrestle and tase the passenger to place him in handcuffs and leg restraints. During a subsequent search of the passenger's person, the officers found a baggie of marijuana and a "small glass pipe."

Shortly thereafter, still at the scene of the traffic stop, another officer observed Ingraham moving in the patrol car as if "actively destroying something." When the deputy returned to his patrol vehicle, he observed Ingraham holding a ripped plastic bag behind her back containing white powder. There was additional white powder spread along the side of her seat and on her pants, which had not been seen on Ingraham or on the seat prior to her arrest. The white powder in the bag was later identified as methamphetamine. Video surveillance from within the patrol car showed Ingraham removing the bag of methamphetamine from inside her pants and attempting to place it in her mouth. When she failed to do so, Ingraham "[sat] up and rock[ed] back and forth actively destroying the meth and baggie before she was finally removed from the vehicle." After

2

she was transported to the county jail, detention deputies also found pieces of broken glass in Ingraham's pocket and "a broken clear meth pipe up her anus."

Ingraham was ultimately charged with possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, destruction of evidence, and grand theft by possession of stolen property. The State sought a sentencing enhancement under Idaho Code section 19-2514 because of Ingraham's status as a persistent offender. These issues went to jury trial in September 2020, with jury selection commencing on September 18, 2020.

To allow for greater social distancing, the district court conducted voir dire in an exhibit hall at the Kootenai County Fairgrounds. The judge, parties, counsel, and over a hundred potential jurors for two trials were in attendance. Nothing in the record indicates that the exhibit hall was closed off to the public.

At the start of jury selection, the district court explained some of the rules and procedures that would be in place through the upcoming trial pursuant to the Idaho Supreme Court's most recent order on COVID-19 precautions: (1) everyone, including court employees, would wear a face mask; (2) the only mask exception was for witnesses while they were testifying; (3) the jurors would sit approximately six feet apart to social distance; and (4) the trial would be broadcast live on YouTube. The district court further explained that "a bunch" of the courtroom pews had been removed "so that the jury can social distance." Thus, due to limited space and seating, and "the need to social distance," the district court stated that the courtroom would have to be closed to public spectators who wished to physically attend the trial, but that the trial would be available to the public on YouTube.

The district court changed course during a pretrial conference held the morning trial was scheduled to begin. It explained that it planned to permit a limited number of family members and public spectators to attend the trial in person, should they wish, while the YouTube broadcast link could be provided to any other interested persons who could not attend if the courtroom reached its capacity under social distancing rules. The district court explained:

> My intention was if there were one or two people from the public or concerned family members to let them in because we can socially distance if they are willing to wear a face mask. Beyond that, then I have to make accommodations through YouTube, and I'm going to need to know so I can tell those people that I won't let in, I need to let them know how to access it.

3

No public observers or family members attended the trial, and no one requested access to the YouTube broadcast. The only people physically present in the courtroom were the trial participants: the parties, the parties' attorneys, the fourteen jurors, prospective witnesses, bailiffs, court staff, and the judge.

The record shows Ingraham made no objections to the adjusted trial procedures implemented by the district court as they concerned her right to a public trial. In fact, the only objection she made concerning the altered procedures was an objection during voir dire to the panel wearing face masks.

> THE COURT: Does the defense pass the panel for cause?
>
> MS. PAYNE: I can't, Your Honor, because I can't see their faces. I can only base my decision on their answers, so as to their answers, I can say pass for cause, but as to their faces with the face masks, I cannot say.
>
> THE COURT: Okay. I understand your objection if it is an objection.
>
> MS. PAYNE: It is.
>
> THE COURT: But it's overruled. It is overruled, and that's something that should've been covered prior to starting.

Otherwise, Ingraham never objected to, or raised concerns with, the YouTube broadcast, limiting the number of public spectators, social distancing procedures, jury selection taking place at the exhibit hall, or other safety protocols implemented by the district court in conducting Ingraham's trial.

Early in the trial, the State sought to exclude evidence that one of Ingraham's prior felonies had been amended to a misdemeanor. In 2004, Ingraham pleaded guilty to felony possession of methamphetamine. Following good performance on probation, her felony conviction was reduced to a misdemeanor in 2006 pursuant to Idaho Code section 19-2604. (Technically, the felony was amended to a misdemeanor on July 14, 2020, but the order was issued *nunc pro tunc* to July 11, 2006.) Ingraham opposed the State's motion to exclude evidence of her amended conviction. She responded that once a conviction "has been deemed a misdemeanor, . . . it's not a conviction anymore for purposes of the persistent enhancement statute." After reviewing *State v. Brandt*, 110 Idaho 341, 715 P.2d 1011 (Ct. App. 1986), the district court concluded that "a person is still convicted for purposes of [I.C. §] 19-2514 even though they got relief under 19-2604."

Additional evidence introduced at trial by the State consisted of police body camera footage from the traffic stop. The three videos were redacted to remove "dead time" and "the tussle with

4

[the passenger]." All of the videos were admitted without objection from Ingraham. Exhibit 1 primarily showed Ingraham's arrest; Exhibit 2 was footage from the patrol vehicle's interior while Ingraham tried to "crush" the methamphetamine into the crack of the backseat; and Exhibit 13 showed the deputy initially contacting Ingraham, writing the traffic citation, and then searching her vehicle. The first two videos—Exhibits 1 and 2, respectively—played without issue in open court on the first day of trial. However, when the State tried to show Exhibit 13 to the jury on rebuttal, technical difficulties with the DVD player prevented the exhibit from being published to the jury. The State suggested that the jury could simply watch the admitted Exhibit 13, if they wanted to, during deliberations. However, Ingraham expressed initial concern with the jury watching the video without the parties present—telling the court it would be "awkward to just let the jury watch something that isn't in the presence of the parties." The district court concluded that if any member of the jury requested to view Exhibit 13, the court would "grant that request" and all parties would "come back into the courtroom after the jury begins deliberations." Neither Ingraham nor the State objected to this plan.

During closing arguments, Ingraham's defense counsel referenced Exhibit 13. She told the jury, "I encourage you to watch it." Immediately following closing arguments and jury instructions, before deliberations had even begun, a jury member asked to see Exhibit 13. Problems with playing the DVD continued to prevent the exhibit from being shown to the jury at that time, so the district court told the jury to begin their deliberations and then the court would reconvene when it could play the video. Once again, neither the State nor Ingraham objected to the procedure proposed by the court. After the jury began its deliberations, court staff made Exhibit 13 "ready to be published or played to the jury," so all parties, counselors, and court staff returned to the courtroom/jury room solely to watch Exhibit 13 together. All persons other than the jury then left again, leaving the jury to its deliberations.

The jury later found Ingraham guilty on all charges. The jury also found Ingraham was "previously convicted of at least two prior felony offenses" for the purposes of a persistent violator enhancement. Sentencing was set for November 30, 2020, and the district court invited all interested in watching to attend.

At sentencing, the district court ultimately imposed three concurrent 15-year sentences, with five years fixed, for Ingraham's felony convictions. The court also sentenced Ingraham to

5

time served on the misdemeanor convictions. Ingraham timely appealed her conviction and sentences to this Court.

## II. ANALYSIS

### A. Ingraham's right to a public trial was not violated.

Ingraham challenges the district court's modified procedures and public "closures" during jury selection and the remainder of the trial, arguing she was denied her fundamental right to a public trial. She claims these errors are structural and warrant automatic reversal for a new trial. In response, the State contends that Ingraham failed to preserve her arguments by (1) failing to object to any of the trial modifications below and (2) failing to assert fundamental error in her opening brief on appeal. We agree with the State on both counts.

This Court has a longstanding rule that it will not consider issues that are raised for the first time on appeal. Indeed, the Territorial Supreme Court of Idaho applied this rule 155 years ago when it held:

> It is manifestly unfair for a party to go into court and slumber, as it were, on his defense, take no exception to the ruling, present no point for the attention of the court, and seek to present his defense, that was never mooted before, to the judgment of the appellate court. Such a practice would destroy the purpose of an appeal and make the [S]upreme [C]ourt one for deciding questions of law in the first instance.

*Smith v. Sterling*, 1 Idaho 128, 131 (1867); *see also State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019) ("[B]oth the issue and the party's position on the issue must be raised before the trial court for it to be properly preserved for appeal."). Failure to properly raise constitutional issues before the trial court can constitute a waiver of the right to raise the issue on appeal. *State v. Barr*, 166 Idaho 783, 787, 463 P.3d 1286, 1290 (2020).

If an "alleged error was not followed by a contemporaneous objection, it shall only be reviewed by an appellate court under Idaho's fundamental error doctrine." *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010). As stated in *Perry*, to show fundamental error:

> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Id.* at 226, 245 P.3d at 978. "[A] violation of the right to a public trial is a structural error," *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017), meaning it is a constitutional right "so basic to a fair trial" that a violation requires an automatic reversal. *Perry*, 150 Idaho at 222, 245 P.3d at 974. A structural defect would automatically satisfy *Perry*'s third prong. *State v. Haggard*, 166 Idaho 858, 861, 465 P.3d 1097, 1100 (2020).

Additionally, it is a fundamental principle of appellate procedure that appellants are "required to identify legal issues and provide authorities supporting the arguments in the opening brief." *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 205, 61 P.3d 557, 562 (2002); *see also* I.A.R. 35. This Court does not consider arguments raised for the first time in a reply brief. *State v. Hawkins*, 159 Idaho 507, 517, 363 P.3d 348, 358 (2015); *Thomas*, 138 Idaho at 206, 61 P.3d at 563; *State v. Raudebaugh*, 124 Idaho 758, 763, 864 P.2d 596, 601 (1993). Raising a new issue at a "late stage of the briefing does not allow for full consideration of the issue," nor does it give a respondent a fair opportunity to respond to the issue. *Raudebaugh*, 124 Idaho at 763, 864 P.2d at 601. Thus, such late arguments, which at best seem to be a legal afterthought and, at worst, appear calculated to prevent opposing counsel from offering a fair response, are generally not considered by the Court. *Id.*

Here, the record is clear that Ingraham never objected to the trial modifications concerning public access, much less raised any specific constitutional claims before or during trial. More specifically, Ingraham never objected to the use of the county fairgrounds exhibit hall for jury selection, the trial's broadcast on YouTube, the removal of pews in the courtroom to socially distance the jury, or the reduced access to attend the trial in person. The only objection made to any of the modified trial procedures was an unspecified and cryptic concern about the jury pool wearing masks throughout voir dire as the basis for not passing "their faces" for cause. Yet, Ingraham passed "their answers" for cause, suggesting she had no specific concerns that the remaining jurors were qualified. Otherwise, the defense agreed with or acquiesced to the trial court's proposed plans at every turn. Because Ingraham made no objection to the attendance limitations or trial modifications in her case to the district court below, her claim of a constitutional error on appeal is reviewable only if she demonstrates that the trial court's actions constituted fundamental error. *Perry*, 150 Idaho at 225–26, 245 P.3d at 977–78; *see also State v. Overline*, 154 Idaho 214, 217, 296 P.3d 420, 423 (Ct. App. 2012). This she failed to do.

7

Not only has Ingraham failed to demonstrate fundamental error, she has also failed to raise it as an issue at all. As noted, Ingraham did not raise the claim of fundamental error in her opening brief on appeal. The closest Ingraham comes to discussing Idaho's fundamental error analysis is the use of the phrase "fundamental rights" in her conclusion: "The errors which occurred in this case are of such magnitude in denying the [sic] Ms. Stacy Ingraham her fundamental rights that the case must be remanded for a new trial." Even in her reply briefing, fundamental error is invoked in name only before Ingraham repeats her arguments that the trial court was required to apply the factors from *Waller v. Georgia*, 467 U.S. 39 (1984). The *Waller* test only applies if the accused objects to closing the court. *See Waller*, 467 U.S. at 47–48. Here, the record shows that not only did Ingraham fail to object, but it also confirms that the trial was never closed.

Ingraham's misstatements and distortions of the record, which appear deliberately calculated to allow her to make these constitutional arguments on appeal, are of grave concern to the Court. Ingraham repeatedly asserts in her briefing that her court proceedings below—from jury selection through the remainder of the trial—were "closed to the public." Such baseless assertions are unavailing. For example, at Ingraham's trial, public attendance was limited, but the courtroom was not closed. The district court specifically made some seating available on the first day of trial to ensure that any of Ingraham's family members or friends, as well as public spectators, could attend the trial while maintaining social distancing. This was done per this Court's emergency orders in response to the COVID-19 Pandemic, with the applicable order issued September 16, 2020, just two days before jury selection commenced in Ingraham's case. Idaho Supreme Court, *Amended Order Re: Jury Trials* (Sept. 16, 2020), https://isc.idaho.gov/EO/FINAL-Amended-Order-In-Re-Jury-Trials_9-16-20.pdf (hereinafter "Emergency Order"). The district court also made arrangements to provide virtual access to the trial through a YouTube broadcast if the room reached capacity.

> My intention was if there were one or two people from the public or concerned family members to let them in because we can socially distance if they are willing to wear a face mask. Beyond that, then I have to make accommodations through YouTube, and I'm going to need to know so I can tell those people that I won't let in, I need to let them know how to access it.

Ultimately, no public observers or family members attended Ingraham's trial, and no one requested access to the YouTube broadcast. While there was an early indication by the district court that it considered barring all spectators, that discussion occurred before the trial and no

8

capacity restriction was ever executed by the court. By the time the trial commenced, the district court independently changed course to ensure some seating remained available to public attendees, starting with "one or two people from the public or concerned family members." Importantly, Ingraham has failed to assert or show that *anyone* who wanted to attend the trial in person, or watch it live on YouTube, was prevented from doing so.

As for voir dire, the record shows that the jury selection took place at the exhibit hall of the county fairgrounds, which is public property. The judge, parties, counsel, and over a hundred potential jurors for two trials attended jury selection. Nothing in the record indicates that the proceedings were closed to the public and, like at trial, no one requested, or was denied, access to the proceedings, either in person or via YouTube. Thus, the record not only confirms the district court's careful compliance with the Emergency Order, but also its willingness to provide *both* virtual and physical access to the courtroom in consideration of Ingraham's public trial rights.

While Ingraham has framed her appeal to present questions of whether virtual access to the courts satisfies the constitutional standards of a public trial under the Sixth Amendment of the United States Constitution and Article 1, section 13 of the Idaho Constitution, the record clearly demonstrates that the court remained *physically* accessible to the public at all times. Ingraham points to nothing in the record showing that the courtroom was closed at any instance in this trial. Thus, her assertions of complete exclusion of the public from the trial proceedings, when in fact there were only capacity restrictions established to ensure the safety of the public and all trial participants, amount to nothing more than inflammatory accusations. The Emergency Order and its counterparts were issued by this Court to ensure that those safeguards of a free society continued in the face of a public health crisis, while at the same time balancing the need to protect the lives and health of those attending court proceedings. Simply put, restricted access to seating, supplemented by remote viewing options, is not equivalent to barring the courthouse doors. Nothing in either the Idaho or federal constitutions requires a definitive number of seats be made available in a courtroom.

Ingraham not only failed to preserve her claims for appeal, but she also failed to properly identify the legal issues or provide supporting authority on appeal. Further, her efforts to misstate the record in an attempt to circumvent the preservation rules have been equally unavailing. Accordingly, her appeal is denied.

**B. There was no error in publishing Exhibit 13 during jury deliberations.**

Ingraham also challenges on appeal the district court's decision to publish Exhibit 13, a video, to the jury after deliberations began. She argues that this manner of publication violated her "right to not be deprived of liberty without due process of the law," was "reversible error" for reopening the trial, and imposed "inherent unfairness by unduly emphasizing Exhibit #13 in the midst of the jury's deliberations." She ultimately argues that this is reversible error requiring a new trial. The State argues that Ingraham failed to preserve this claim of error on the admitted exhibit and that it was ultimately invited error. We conclude that there was no error in the publication of Exhibit 13.

Rule 24.1(b)(4) of the Criminal Rules permits jurors to have copies of admitted exhibits during trial. We recently held in *State v. Weigle* that "Idaho trial judges have the discretion to allow demonstrative exhibits to be given to the jury during its deliberations, especially if appropriate safeguards are employed to address potential prejudice." 165 Idaho 482, 488–89, 447 P.3d 930, 936–37 (2019). Thus, recent precedent controls here and demonstrates that the manner of publishing Exhibit 13 was both appropriate and within the district court's discretion.

Importantly, this is not a case where the admissibility of the evidence was challenged, only the timing of its publication. Here, each side wanted the jury to watch Exhibit 13. Publication of this video evidence would have occurred during trial, but for technological glitches that delayed the court's ability to play the video for the jury at that time. With the consent of both parties, and upon hearing the defense's concerns for "awkwardness," the district court concluded that the court would reconvene briefly with the jury and only for the purposes of watching the video together. This was done without objection from either side. Shortly after the jury began deliberations, court staff fixed the DVD player and the parties published Exhibit 13 to the jury. Pursuant to Criminal Rule 24.1 and *Weigle*, the trial court properly used its discretion in permitting an exhibit to be given to the jury during its deliberations while employing safeguards against prejudice.

Assuming, arguendo, that there was error in the publication, we agree with the State that the doctrine of invited error precludes Ingraham's argument. "The invited error doctrine precludes a criminal defendant from 'consciously' inviting district court action and then successfully claiming those actions are erroneous on appeal." *State v. Barr*, 166 Idaho 783, 786, 463 P.3d 1286, 1289 (2020) (citations omitted). In other words, the doctrine's purpose "is to prevent a party who caused or played an important role in prompting a trial court to take action, from later challenging

10

that decision on appeal." *Id.* At the time of the State's motion to admit the evidence, Ingraham neither objected to the admission of Exhibit 13 nor moved to strike it. In fact, she later pushed for its publication to be in the presence of all parties, with the jury, and actively encouraged the jury to watch the exhibit as soon as it became available. During closing arguments, Ingraham's defense counsel cited to scenes from the video and expressly told the jury, "I encourage you to watch [Exhibit 13]." Thus, any risk of error in reconvening court after jury deliberations had already begun were directly invited by Ingraham as she prompted the district court to take a certain action only to challenge the decision on appeal. Although we find no error here, when an admitted exhibit is published to the jury during deliberations, the presence of the court, the attorneys, and the defendant is not required. While a jury is deliberating, unnecessary exposure of the jury to outside influences should be kept to a minimum. Inasmuch as Ingraham has demonstrated no due process violation in the district court's handling of Exhibit 13, we affirm Ingraham's judgment of conviction.

## C. It was error to predicate the persistent violator enhancement on a prior felony conviction, which had been previously "deemed" a misdemeanor pursuant to Idaho Code section 19-2604.

Ingraham finally challenges the legal basis upon which the persistent violator enhancement was predicated. In phase two of the trial, the district court instructed the jury that the State alleged that Ingraham had been convicted of the felony offense of possession of a controlled substance in Kootenai County in 2004. The district court in the 2004 Kootenai County case granted Ingraham relief from that conviction pursuant to Idaho Code section 19-2604 after Ingraham successfully completed probation. Apparently, an amended judgment was not entered at the time the application for relief was granted, but, shortly before the trial in this case, the district court assigned to the 2004 Kootenai County case entered an amended judgment *nunc pro tunc* to July 11, 2006 "deeming" the 2004 felony conviction a misdemeanor. Citing *State v. Brandt*, 110 Idaho 341, 715 P.2d 1011 (Ct. App. 1986), and other case law, the district court in this case concluded that "a person is still convicted for purposes of [Idaho Code section] 19-2514 [the persistent violator enhancement statute] even though they got relief under 19-2604." The district court's reliance on *Brandt* was misplaced given the plain language of Idaho Code section 19-2604(2), which unambiguously provides that the 2004 conviction was "deemed" (*i.e.*, "considered") a misdemeanor when the application for relief was granted.

11

Issues of statutory interpretation are questions of law over which this Court exercises free review. *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013). "Statutory interpretation begins with the statute's plain language." *Id.* The statute is considered as a whole, and words are given "their plain, usual, and ordinary meanings." *Id.* If the statute's language is unambiguous, then this Court will give effect to the legislature's clearly expressed intent. *Id.* at 361–62, 313 P.3d at 17–18.

Section 19-2604 authorizes some criminal defendants to apply for relief from a felony judgment of conviction. The statute authorizes the district court to grant relief in a number of forms, including the discretion to enter an amended judgment "deeming" a felony conviction a misdemeanor:

> (1) (a) Application for relief under this subsection may be made by the following persons who have pled guilty to or been found guilty of a crime:
>> (i) A defendant whose sentence has been suspended or who has received a withheld judgment;
>> (ii) A defendant in a felony case whose sentence has been commuted under section 19-2601 1., Idaho Code;
>> (iii) A defendant in a felony case upon whom the court has not imposed a sentence to the custody of the board of correction;
>> (iv) A defendant who has not been sentenced but who has successfully completed a drug court or mental health court program;
>> (v) A defendant in a misdemeanor case who has not been sentenced to serve a term in the county jail or whose sentence or any portion thereof has been suspended.
> (b) Upon application of the defendant and upon satisfactory showing that:
>> (i) The court did not find, and the defendant did not admit, in any probation violation proceeding that the defendant violated any of the terms or conditions of any probation that may have been imposed; or
>> (ii) The defendant has successfully completed and graduated from an authorized drug court program or mental health court program and during any period of probation that may have been served following such graduation, the court did not find, and the defendant did not admit, in any probation violation proceeding that the defendant violated any of the terms or conditions of probation;
> the court, if convinced by the showing made that there is no longer cause for continuing the period of probation should the defendant be on probation at the time of the application, and that there is good cause for granting the requested relief, may terminate the sentence or set aside the plea of guilty or conviction of the defendant, and finally dismiss the case and discharge the defendant or may amend the judgment of conviction from a term in the custody of the state board of correction to "confinement in a penal facility" for the number of days served prior to sentencing, *and the amended judgment may be deemed to be a misdemeanor*

*conviction*. This shall apply to the cases in which defendants have been convicted before this law goes into effect, as well as to cases which arise thereafter. The final dismissal of the case as herein provided shall have the effect of restoring the defendant to his civil rights.

I.C. § 19-2604(1)(a)-(b) (emphasis added). The word "deemed," according to Merriam-Webster's online dictionary, means "to come to think or judge: consider[.]" *Deem*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/deem (last visited April 7, 2023).

There is no dispute that the district court in the 2004 Kootenai County case entered an order "deeming" Ingraham's felony conviction a misdemeanor. The order was entered *nunc pro tunc* to July 11, 2006 which means that as of that date, Ingraham's 2004 conviction was "considered" a misdemeanor. Thus, it was legal error to instruct the jury in September 2020 that a persistent violator enhancement could be predicated on that conviction. The conviction was for a misdemeanor at the time the jury in this case was instructed.

The district court, primarily relying on *State v. Brandt*, 110 Idaho 341, 344, 715 P.2d 1011, 1014 (Ct. App. 1986) and *State v. Reed*, 149 Idaho 901, 904, 243 P.3d 1089, 1092 (Ct. App. 2010), concluded that the persistent violator enhancement could still be predicated on the 2004 Kootenai County conviction even though Ingraham was granted relief under Idaho Code section 19-2604. *Brandt* and *Reed* are distinguishable, and do not control the outcome of this case.

In *Brandt*, the defendant pled guilty to three separately charged felonies on a single day and was awaiting sentencing in the Cassia County jail. *Id.* at 342, 715 P.2d at 1012. Before sentencing occurred, Brandt escaped from the jail and was recaptured that same day. *Id.* He was subsequently found guilty of escape, injury to jail property, assault, and robbery. *Id.* The jury also found he was a persistent violator under Idaho Code section 19-2514 based on his three prior guilty pleas. *Id.* The Idaho Court of Appeals explained that one of the issues presented on appeal was whether Brandt's guilty pleas (no formal convictions had yet been entered) constituted "convictions" for purposes of the persistent violator enhancement statute:

> As noted, Brandt had pled guilty to the three felonies, but a judgment had not yet been entered against him nor had he been sentenced when he was subsequently charged as a persistent violator in respect to the escape incident. Thus, the question arises whether Brandt had been "convicted" of the felonies as required by I.C. § 19–2514. Specifically, were Brandt's pleas sufficient to establish convictions or does the statute require the formal entry of a judgment and sentence?

13

*Id.* at 344, 715 P.2d at 1014. The Court of Appeals ultimately determined that Brandt's guilty pleas constituted convictions when they were accepted by the district court.

The Court of Appeals started its analysis in *Brandt* by explaining the term "conviction" can encompass two distinct concepts: "It could represent a particular phase of a criminal case in which guilt is determined, either by admission or by jury verdict. Alternatively, it could be viewed as the final conclusion of the prosecution, including the entry of a judgment and the imposition of a sentence." *Id.* (analyzing *State v. O'Dell*, 71 Idaho 64, 225 P.2d 1020 (1950)). Given these distinctions, the Court of Appeals examined the purpose of the persistent violator enhancement and analogized it to the purpose of Idaho Code section 18-308 which authorizes the imposition of consecutive sentences when a defendant is guilty of multiple criminal endeavors. *Id.* at 345, 715 P.2d at 1015. Given this Court's decision in *State v. Chauncey*, 97 Idaho 756, 554 P.2d 934 (1976), where it concluded that a guilty plea constituted a conviction for purposes of determining a judge's authority to impose consecutive sentences, the Court of Appeals determined that a guilty plea, when accepted by the district court, constitutes a conviction for purposes of a persistent violator enhancement:

> We conclude that for purposes of § 19–2514, a conviction occurs when a defendant pleads guilty and the plea is accepted by the court. Thus, in essence, a previous felony conviction under § 19–2514 arises upon a determination of guilt, whether it be by a defendant's own admission or as a result of a jury verdict. By pleading guilty the defendant is admitting to the truthfulness of the charges against him. He is, in fact, creating his own track record. Once the defendant has admitted to his alleged activities, there is no purpose served by delaying recognition of the defendant's previous crimes for purposes of § 19–2514. We recognize the need for a clearly distinguishable point at which a defendant can be said to have been convicted of a felony for purposes of § 19–2514. In light of the purposes of the persistent violator statute, we think that point is identified by our holding in this case.

*Brandt*, 110 Idaho at 345, 715 P.2d at 1015. Critically, *Brandt* simply did not address whether the granting of relief under Idaho Code section 19-2604 has any effect on a persistent violator enhancement, and the district court's reliance on the case was misplaced.

The district court's reliance on *Reed*, 149 Idaho at 904, 243 P.3d at 1092, was also inapposite. In *Reed*, the Court of Appeals addressed whether a felony DUI conviction reduced to a misdemeanor under Idaho Code section 19-2604(1) could be used as an enhancement in a subsequent DUI case under Idaho Code section 18-8005(6). Based on the plain language of Idaho Code section 18-8005(6), the Court of Appeals held that it could:

As in *Perkins*, it can be presumed that, when the Idaho Legislature enacted I.C. § 18–8005(6), it was aware that a defendant's previous DUI conviction could be dismissed under I.C. § 19–2604(1). The definition of conviction stated in I.C. § 18–8005(6) mirrors, almost exactly, that set forth in the Registration Act. The DUI enhancement provision applies to any person who "*previously has been found guilty of or has pled guilty to two (2) or more violations ... notwithstanding the form of the judgment(s) or withheld judgment(s).*" I.C. § 18–8005(6). The legislature could have provided an exemption in the definition of conviction for those defendants whose convictions had been dismissed under I.C. § 19–2604(1), but it did not. As noted in *Deitz*, the purpose of both I.C. § 19–2604(1) and I.C. § 18–8005(6) is to promote rehabilitation and prevent recidivism. Because both statutes have the same purpose, one should not be construed to negate the other. The Idaho Legislature has specified that for many types of offenses, a withheld judgment will be treated as a prior conviction in the event of subsequent crimes. *Woodbury*, 141 Idaho at 549, 112 P.3d at 837 (citing I.C. § 18–8005(6)). It would be against well-established policy to allow the leniency provided by I.C. § 19–2604(1) to benefit repeat offenders who are charged under I.C. § 18–8005(6). *See Deitz*, 120 Idaho at 758, 819 P.2d at 1158.

*Reed*, 149 Idaho at 904, 243 P.3d at 1092 (emphasis added). Critically, the *Reed* decision is based on the plain language of the DUI statute emphasized above. Section 18-2005(6) makes it clear that once a person is found guilty of DUI or pleads guilty to a DUI it is sufficient grounds to enhance a future charge regardless of what type of leniency or relief may have been granted following the conviction. There is no such language in the persistent violator enhancement statute which simply states:

Any person convicted for the third time of the commission of a felony, whether the previous convictions were had within the state of Idaho or were had outside the state of Idaho, shall be considered a persistent violator of law, and on such third conviction shall be sentenced to a term in the custody of the state board of correction which term shall be for not less than five (5) years and said term may extend to life.

I.C. § 19-2514. Accordingly, we conclude that Ingraham's amended conviction should not have been considered for enhancement purposes under Idaho Code section 19-2514.

The dissent takes aim at the majority's conclusion, contending that it is contrary to longstanding views of district judges and asserting that "one would have expected the legislature to have acted to amend these statutes if the Idaho judiciary's interpretation and application of these statutes for almost 40 years has been inconsistent with the intent of the legislature." Challenges to longstanding views of district judges is the stuff that appeals are made of. As for legislative intent, the dissent is willing to take an inferential leap we will not make. To be sure, there are two

15

important public policies at stake in this case—the policy of curbing recidivism (the persistent violator statute) and the policy of rewarding rehabilitation (the leniency statute). The role of the judiciary is to apply statutes as plainly written, not make a judgment call based on our policy preference. The legislature may, in fact, decide that they do not agree with the result reached in today's decision and amend the persistent violator enhancement statute to read like Idaho Code section 18-8005(6), the DUI statute at issue in *Reed.* That is the legislature's call to make, not this Court's.

On a final note, the Court's interpretation of Idaho Code sections 19-2514 and 19-2604 announced today will only be applied prospectively and to cases now on direct review. The Court set out the standard for determining retroactive versus prospective application of a new criminal procedural rule in *State v. Owens*, 158 Idaho 1, 343 P.3d 30 (2015), a case that reversed longstanding precedent concerning the calculation of credit for time served under Idaho Code section 18-309:

> Finally, we must determine whether we will apply this decision retroactively. We explicitly adopted the retroactivity test from *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), for criminal cases on collateral review. *Rhoades v. State*, 149 Idaho 130, 133, 233 P.3d 61, 64 (2010); *Fields v. State*, 149 Idaho 399, 401, 234 P.3d 723, 725 (2010). The general rule from *Teague* is that our current interpretation of a new criminal procedural rule does not apply retroactively to cases already final when a new rule is announced. *Teague*, 489 U.S. at 310, 109 S.Ct. at 1075, 103 L.Ed.2d at 355–56; *Rhoades*, 149 Idaho at 139, 233 P.3d at 70. However, a new rule applies retroactively when it meets one of two exceptions: (1) the rule substantively alters punishable conduct or (2) the rule is a "watershed" rule implicating the fundamental fairness of the trial. *Teague*, 489 U.S. at 311, 109 S.Ct. at 1075–76, 103 L.Ed.2d at 356–57; *Rhoades*, 149 Idaho at 139, 233 P.3d at 70. We have explained that *Teague's* [sic] approach "advances an important interest: the finality of judgments" and "generally avoids the retroactive application of a new rule of law to judgments, based upon trials that were not fundamentally unfair and had adequate truth-finding procedures, that were final when the new rule was announced." *Rhoades*, 149 Idaho at 138, 233 P.3d at 69.

> The threshold question in applying the *Teague* test is whether a case announces a new rule. *See State v. Mares*, 335 P.3d 487, 505 (Wyo.2014). Generally a case announces a new rule "when it breaks new ground or imposes a new obligation" on states. *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070, 103 L.Ed.2d at 349. In other words, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* (emphasis in original). We have never before interpreted Idaho Code section 18–309 as adding credit for time served to each consecutive count in a judgment.

16

Because we are now interpreting section 18–309 in a way that was not dictated by precedent, this case announces a new rule.

> We will not apply this new rule retroactively to cases on collateral review unless the rule meets one of the two exceptions articulated in *Teague*. *Rhoades*, 149 Idaho at 139, 233 P.3d at 70. The first exception requires a substantive rule. *Id.* A rule is substantive when it alters the range of conduct or the class of persons that the law punishes. *Schriro v. Summerlin*, 542 U.S. 348, 353, 124 S.Ct. 2519, 2523, 159 L.Ed.2d 442, 449 (2004). Conversely, rules that regulate only the manner of determining the defendant's culpability are procedural. *Id.* The second exception is a watershed rule implicating a criminal proceeding's fundamental fairness. *Sawyer v. Smith*, 497 U.S. 227, 241–42, 110 S.Ct. 2822, 2830–31, 111 L.Ed.2d 193, 210–11 (1990). A rule is a watershed rule when it improves accuracy and alters an understanding of the bedrock procedural elements essential to a proceeding's fairness. *Id.* at 242, 110 S.Ct. at 2831, 111 L.Ed.2d at 211.

> This Court's interpretation of Idaho Code section 18–309's plain language meets neither exception. First, the statute's plain language does not alter the class of persons or the conduct the law punishes. The statute only alters the amount of time a person spends incarcerated after the court determines he committed punishable conduct. Second, the statute is not a watershed rule implicating a trial's fundamental fairness because defendants sentenced under the statute still received a fair plea, trial, and sentencing. The statute only affects the punishment after trial. Also, the trial court already had discretion to sentence the defendant to concurrent counts or consecutive counts. In sum, our new rule does not meet either exception. Therefore, we apply this Court's new interpretation of Idaho Code section 18–309's plain language only prospectively and to cases now on direct review.

*Owens*, 158 Idaho at 6–7, 343 P.3d at 35–36. Like in *Owens*, the Court's interpretation of the statutory provisions at issue here does not meet either of the *Teague* exceptions. It does not alter punishable conduct and is not a watershed rule implicating a trial's fundamental fairness. Therefore, this interpretation will only apply prospectively and to cases now on direct review.

Because the district court erred in its legal analysis, we vacate the sentencing portion of the judgment and remand for further proceedings consistent with this opinion.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment of conviction in part. We vacate that portion of the judgment setting forth the sentence and remand the case for further proceedings.

Justices STEGNER and ZAHN, CONCUR.

MOELLER, J., dissenting.

I write separately to register my dissent with the majority's interpretation of Idaho Code sections 19-2514 and 19-2604(2), and its decision to deviate from the Idaho judiciary's longstanding application of *State v. Brandt*, 110 Idaho 341, 715 P.2d 1011 (Ct. App. 1986). I fully concur with Parts A and B of the majority's opinion because Ingraham's right to a public trial was not violated by the precautions taken in her case and there was no error in publishing an admitted trial exhibit during jury deliberations. However, I cannot join in Part C of the majority's opinion, which reverses the district court's decision to treat Ingraham's 2004 *felony* conviction *as a felony* for purposes of applying the persistent violator enhancement to her sentence.

Idaho's persistent violator law is set forth in Idaho Code section 19-2514 and it applies to "[a]ny person *convicted* for the third time of the commission of a felony." (Emphasis added.) If it applies, section 19-2514 acts as an enhancement to the standard sentence for the crime charged and requires a qualifying defendant to be "sentenced to a term in the custody of the state board of correction . . . for not less than five (5) years and said term may extend to life." I.C. § 19-2514. This case concerns the confluence of section 19-2514 with section 19-2604(2), which states the circumstances under which a court "may amend the judgment of conviction" and provides that "the amended judgment may be *deemed* to be a misdemeanor conviction." (Emphasis added.) Simply put, the majority overemphasizes the "deemed" language in section 19-2604(2) and fails to give effect to the plain language and clear intention of section 19-2514—to protect the public by reducing recidivism and encouraging rehabilitation through the imposition of stiffer sentences for those with three or more felony "convictions."

Here, there is no dispute that Ingraham was convicted of a felony in 2004 for possession of methamphetamine. Likewise, it is undisputed that Ingraham was also convicted of a felony in 2017 for accessory to murder. The record shows that in the case before us, Ingraham was found guilty of three additional felonies: possession of methamphetamine, concealment of evidence, and grand theft by possession of stolen property. Thus, including any one of her three new convictions, it can accurately be said that Ingraham has now been "convicted for the third time" for the commission of a felony. I.C. § 19-2514.

Of course, this case would not be before us if it were that simple. Ingraham's 2004 felony conviction was later "deemed" to be a misdemeanor conviction pursuant to Idaho Code section 19-2604(2) after she completed a period of probation. The question before us is whether the district

18

court could still consider Ingraham's 2004 plea of guilty to a felony as a "felony conviction" for the purposes of a persistent violator enhancement. I believe that this question can be reconciled by applying the plain language of the term "convicted for the third time" as used in Idaho Code section 19-2514, and is supported by the Idaho Court of Appeals decisions in *State v. Brandt*, 110 Idaho 341, 715 P.2d 1011 (Ct. App. 1986), and *State v. Reed*, 149 Idaho 901, 904, 243 P.3d 1089, 1092 (Ct. App. 2010).

As acknowledged in the majority opinion, *Brandt* concerned a defendant's challenge to a persistent violator charge where three previous felony convictions had been entered in a single proceeding, all on the same day. Before sentencing on these crimes—and before the entering of a judgment—Brandt escaped from jail, was recaptured, and was subsequently charged with additional crimes related to his escape. Brandt was also "charged with being a persistent violator" because "he had pled guilty to the [three] previous felonies" even though no judgment or sentence had yet been entered. 110 Idaho at 343, 715 P.2d at 1013. The Idaho Court of Appeals concluded that Brandt's three guilty pleas established the necessary prior convictions for purposes of the persistent violator statute. *Id.* at 344, 715 P.2d at 1014. *Brandt* did not deal with an amended conviction; however, in reaching its decision, the Court of Appeals determined "that for purposes of § 19-2514, a conviction occurs when a defendant pleads guilty and the plea is accepted by the court." *Id.* at 345, 715 P.2d at 1015.

> Thus, in essence, a previous felony conviction under § 19–2514 *arises upon a determination of guilt*, whether it be by a defendant's own admission or as a result of a jury verdict. *By pleading guilty the defendant is admitting to the truthfulness of the charges against him. He is, in fact, creating his own track record.* Once the defendant has admitted to his alleged activities, there is no purpose served by delaying recognition of the defendant's previous crimes for purposes of § 19–2514.

*Id.* (emphasis added).

The reasoning behind the Court of Appeals' decision in *Brandt* is sound. The plain language of Idaho Code section 19-2514 simply states that a person "convicted" of a felony three times shall be considered a persistent violator of the law:

> Any person *convicted* for the third time of the commission of a felony, whether the previous convictions were had within the state of Idaho or were had outside the state of Idaho, shall be considered a persistent violator of law, and on such third conviction shall be sentenced to a term in the custody of the state board of correction which term shall be for not less than five (5) years and said term may extend to life.

19

I.C. § 19-2514 (emphasis added). The statute is meant to enhance punishment for repeat offenders, like Ingraham. In *Brandt*, the fact that there were three *convictions* was sufficient to establish a persistent violator of the law. As articulated by the *Brandt* court, the conviction arises upon a determination of guilt, and the felony conviction is the "distinguishable point at which a defendant can be said to have been convicted of a felony for purposes of § 19–2514." *Brandt*, 110 Idaho at 345, 715 P.2d at 1015.

Reed is also applicable here. While *Reed* did not specifically contemplate an amended conviction under Idaho Code section 19-2604(2), it addressed the conflict between the policy behind a persistent violator enhancement and the purpose of the relief provided under Idaho Code section 19-2604—which is part and parcel of the issue before us. In *Reed*, the Idaho Court of Appeals addressed whether a felony dismissed under Idaho Code section 19-2604(1) could be counted for enhancement purposes. 149 Idaho at 902, 243 P.3d at 1090. Reed pleaded guilty to a misdemeanor DUI charge in 2004 and received a withheld judgment. Upon completion of his probation, the lower court dismissed Reed's DUI conviction pursuant to Idaho Code section 19-2604(1). *Id.* However, in 2008, the State charged Reed with a felony DUI, which was enhanced from a misdemeanor DUI due to two prior DUI convictions: the dismissed 2004 charge and a second DUI from 2007. *Id.* The Court of Appeals determined that "an adjudication of guilt for a DUI," regardless of whether the case is later dismissed under Idaho Code section 19–2604(1), "can be used for enhancement purposes under I.C. § 18–8005(5)." *Id.* at 903, 243 P.3d at 1091. The *Reed* court held that "it is the determination of guilt, not the form of conviction, which determines whether an enhancement can be sought." Because the persistent violator enhancement statutes "were enacted for the purpose of encouraging rehabilitation and discouraging recidivism," the Court of Appeals concluded that "the leniency" of Idaho Code section 19-2604 "should not be construed to negate the enhancement purposes of" the statute. *Id.*

The holdings in *Brandt* and *Reed* are instructive. Ingraham's felony conviction occurred when she pleaded guilty in 2004 and the court accepted her plea. While the later amendment of her conviction might allow it to be "deemed" as a misdemeanor in most aspects of Idaho law, it is still a "felony conviction" for enhancement purposes because that is what she pleaded guilty to. Ingraham's conviction in 2004 was the "distinguishable point at which [she] can be said to have been convicted of a felony for purposes of § 19–2514." *Brandt*, 110 Idaho at 345, 715 P.2d at 1015. Therefore, the district court did not err in applying *Brandt* and *Reed* to Ingraham's case. It

20

correctly determined that Ingraham's persistent violator enhancement could be predicated on her 2004 felony *conviction* despite the later amendment "*deeming*" it a misdemeanor under Idaho Code section 19-2604(2). To treat her conviction otherwise undermines the very purpose of enhancement laws in curbing recidivism and encouraging rehabilitation.

Importantly, the district court's application of *Brandt* and *Reed* was consistent with the decades-long understanding of how to deal with such conflicts between persistent violator enhancements and previously amended convictions. As the district court noted from the bench:

> [I]n the nineteen years I've been doing this I have always had the belief that a prior felony, even if it was set aside . . . [or reduced] down to a misdemeanor, is still a conviction for purposes of [I.C. §] 19-2514. It may be that that belief was based on *State v. Brandt*.

The trial court's observations accurately reflect the common, reasonable, and widespread application of *Brandt* and *Reed* in our district courts—an application from which the majority's decision now suddenly diverges. This is not to suggest that the mere fact that something is a longstanding practice provides a reason to support an unreasonable interpretation of the law. However, the *Brandt* decision is applicable to this case and its interpretation remains reasonable. It sets forth the correct application of Idaho Code section 19-2514 by focusing on the original conviction, even where a defendant received relief through an amended judgment pursuant to Idaho Code section 19-2604. Additionally, if the interpretation and application of these statutes for almost 40 years by Idaho's lower courts has been inconsistent with the intent of the Legislature, one would have expected the Legislature to have acted to amend these statutes.

Ironically, the majority's interpretation may potentially harm criminal defendants in the long run. If an amended felony conviction can no longer be used for sentencing enhancements, prosecutors may be less willing to offer withheld judgments or agree to post-sentence reductions under section 19-2604. Judges, too, may determine that harsher consecutive sentences may be necessary to curb recidivism where persistent violators might be able to escape enhanced sentencing for later crimes. Therefore, while today's decision may be a win for Ingraham—who has now been convicted of her fifth felony—it may prove to be a bigger loss for defendants across Idaho.[1]

---

[1] Indeed, Ingraham might ultimately be the only winner here. The majority's opinion, applying *Teague v. Lane*, 489 U.S. 288 (1989) and *State v. Owens*, 158 Idaho 1, 343 P.3d 30 (2015), announces that its decision may only be applied "prospectively," meaning that other prisoners previously sentenced like Ingraham will receive no relief. Thus, even if

For these reasons, I would affirm the district court's analysis. It was not an error to consider Ingraham's 2004 felony conviction as a felony for enhancement purposes under Idaho Code section 19-2514. In fact, it was precisely what the law required. Accordingly, I respectfully dissent.

Chief Justice BEVAN CONCURS.

---

the majority's analysis is correct, it will provide no comfort for those currently serving an enhanced sentence under an interpretation of Idaho law the majority has now deemed to be incorrect.